## OESTEREICH *v.* SELECTIVE SERVICE SYSTEM LOCAL BOARD NO. 11, CHEYENNE, WYOMING, ET AL.

No. 46. Argued October 24, 1968.—Decided December 16, 1968.

*Melvin L. Wulf* argued the cause for petitioner. With him on the brief were *Alan H. Levine, John Griffiths,*

*Marvin M. Karpatkin, Eleanor Holmes Norton,* and *William F. Reynard.*

*Solicitor General Griswold* argued the cause for respondents. With him on the brief were *Assistant Attorney General Weisl, Francis X. Beytagh, Jr., Morton Hollander,* and *Robert V. Zener.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner is enrolled as a student at a theological school preparing for the ministry and was accordingly classified as IV–D by the Selective Service Board. Section 6 (g) of the Selective Service Act, 62 Stat. 611, as amended, now § 6 (g) of the Military Selective Service Act of 1967 (see 81 Stat. 100, § 1 (a)), 50 U. S. C. App. § 456 (g), gives such students exemption from training and service under the Act.[1] He returned his registration certificate to the Government, according to the complaint in the present action, "for the sole purpose of expressing dissent from the participation by the United States in the war in Vietnam." Shortly thereafter his Board declared him delinquent (1) for failure to have the registration certificate in his possession,[2] and (2) for

---

[1] Section 6 (g) reads as follows:

"Regular or duly ordained ministers of religion, as defined in this title, and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title."

[2] Section 1617.1 of the Selective Service System Regulations requires a registrant to have the certificate in his personal possession at all times (32 CFR § 1617.1), and § 1642.4, 32 CFR § 1642.4 (a), provides that whenever a registrant fails to perform "any duty"

failure to provide the Board with notice of his local status. The Board thereupon changed his IV–D classification to I–A. He took an administrative appeal and lost and was ordered to report for induction.

At that point he brought suit to restrain his induction. The District Court dismissed the complaint, 280 F. Supp. 78, and the Court of Appeals affirmed. 390 F. 2d 100. The case is here on a petition for a writ of certiorari which we granted. 391 U. S. 912.

As noted, § 6 (g) of the Act states that "students preparing for the ministry" in qualified schools "shall be exempt from training and service" under the Act.[3] Equally unambiguous is § 10 (b)(3) of the Military Selective Service Act of 1967, 81 Stat. 104, which provides that there shall be no pre-induction judicial review "of the classification or processing of any registrant," [4] judicial review being limited to a defense in a criminal prosecution or, as the Government concedes, to habeas corpus after induction.[5] See *Estep* v. *United States,* 327

_____

required of him (apart from the duty to obey an order to report for induction) the Board may declare him to be "a delinquent."

[3] The United States admits for purposes of the present proceeding by its motion to dismiss that petitioner satisfies the requirements of the exemption provided by § 6 (g).

[4] Section 10 (b)(3) reads in pertinent part as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

[5] See S. Rep. No. 209, 90th Cong., 1st Sess., 10, where it is stated: "A registrant who presents himself for induction may challenge his classification by seeking a writ of habeas corpus after his induction. If the registrant does not submit to induction, he may raise as a

U. S. 114, 123–125; *Eagles* v. *Samuels,* 329 U. S. 304; *Witmer* v. *United States,* 348 U. S. 375, 377. If we assume, as we must for present purposes, that petitioner is entitled to a statutory exemption as a divinity student, by what authority can the Board withhold it or withdraw it and make him a delinquent?

In 1967 Congress added a provision concerning the immediate service of members of a "prime age group" after expiration of their deferment, stating that they were the first to be inducted "after delinquents and volunteers." 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. III). Congress has also made criminal the knowing failure or neglect to perform any duty prescribed by the rules or regulations of the Selective Service System. 50 U. S. C. App. § 462 (a) (1964 ed., Supp. III). But Congress did

---

defense to a criminal prosecution the issue of the legality of the classification."

In *Falbo* v. *United States,* 320 U. S. 549, a Jehovah's Witness had been given conscientious objector status and ordered to report to a domestic camp for civilian work in lieu of military service. In defense to a criminal prosecution for disobeying that order, he argued that his local board had wrongly classified him by denying him an exemption as a minister. Without deciding whether Congress envisaged judicial review of such classifications, we held that a registrant could not challenge his classification without first exhausting his administrative remedies by reporting, and being accepted, for induction. Because he might still have been rejected at the civilian camp for mental or physical disabilities, Falbo had omitted a "necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently." *Id.,* at 553. In *Estep* v. *United States,* 327 U. S. 114, petitioners were Jehovah's Witnesses like Falbo who had been denied ministerial exemptions and who challenged that classification in defense to a criminal prosecution for refusing induction. In their case, however, they had exhausted their administrative remedies by reporting, and being accepted, for service, before then refusing to submit to induction. We found nothing in the 1940 Act to preclude judicial review of selective service classifications in defense to a criminal prosecution for refusing induction.

not define delinquency; nor did it provide any standards for its definition by the Selective Service System. Yet Selective Service, as we have noted,[6] has promulgated regulations governing delinquency and uses them to deprive registrants of their statutory exemption, because of various activities and conduct and without any regard to the exemptions provided by law.

We can find no authorization for that use of delinquency. Even if Congress had authorized the Boards to revoke statutory exemptions by means of delinquency classifications, serious questions would arise if Congress were silent and did not prescribe standards to govern the Boards' actions. There is no suggestion in the legislative history that, when Congress has granted an exemption and a registrant meets its terms and conditions, a Board can nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal of the exemption. So to hold would make the Boards free-wheeling agencies meting out their brand of justice in a vindictive manner.

Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption. The Solicitor General confesses error on the use by Selective Service of delinquency proceedings for that purpose.

We deal with conduct of a local Board that is basically lawless. It is no different in constitutional implications from a case where induction of an ordained minister or other clearly exempt person is ordered (a) to retaliate against the person because of his political views or (b) to bear down on him for his religious views or his racial attitudes or (c) to get him out of town so that the amorous interests of a Board member might be better served.

---

[6] *Supra,* at n. 2.

See *Townsend* v. *Zimmerman,* 237 F. 2d 376. In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. As the Solicitor General suggests, such literalness does violence to the clear mandate of § 6 (g) governing the exemption. Our construction leaves § 10 (b)(3) unimpaired in the normal operations of the Act.

No one, we believe, suggests that § 10 (b)(3) can sustain a literal reading. For while it purports on its face to suspend the writ of habeas corpus as a vehicle for reviewing a criminal conviction under the Act, everyone agrees that such was not its intent. Examples are legion where literalness in statutory language is out of harmony either with constitutional requirements, *United States* v. *Rumely,* 345 U. S. 41, or with an Act taken as an organic whole. *Clark* v. *Uebersee Finanz-Korp.,* 332 U. S. 480, 488–489. We think § 10 (b)(3) and § 6 (g) are another illustration; and the Solicitor General agrees. Since the exemption granted divinity students is plain and unequivocal and in no way contested here,[7] and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has

---

[7] We would have a somewhat different problem were the contest over, say, the quantum of evidence necessary to sustain a Board's classification. Then we would not be able to say that it was plain on the record and on the face of the Act that an exemption had been granted and there would therefore be no clash between § 10 (b)(3) and another explicit provision of the Act.

granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type.

We accordingly reverse the judgment and remand the case to the District Court where petitioner must have the opportunity to prove the facts alleged and also to demonstrate that he meets the jurisdictional requirements of 28 U. S. C. § 1331.

*Reversed.*

MR. JUSTICE HARLAN, concurring in the result.

I concur in the holding that pre-induction review is available in this case, but I reach this conclusion by means of a somewhat different analysis from that contained in the opinion of my Brother DOUGLAS.

At the outset, I think it is important to state what this case does and does not involve. Petitioner does not contend that the Selective Service System has improperly resolved factual questions, or wrongfully exercised its discretion, or even that it has acted without any "basis in fact," as that phrase is commonly used in this area of law. See *Estep* v. *United States,* 327 U. S. 114, 122–123 (1946); *ante,* at 238, n. 7. He asserts, rather, that the procedure pursuant to which he was reclassified and ordered to report for induction—a procedure plainly mandated by the System's self-promulgated published regulations, 32 CFR, pt. 1642—is unlawful. Specifically, he asserts that the delinquency reclassification scheme is not authorized by any statute, that it is inconsistent with his statutory exemption as a ministerial student, 50 U. S. C. App. § 456 (g), and that, whether or not approved by Congress, the regulations are facially unconstitutional.[1]

---

[1] Petitioner makes several other arguments which I do not find necessary to discuss.

The pivotal language of § 10 (b)(3), for present purposes, is the statute's proscription of pre-induction judicial review "of the classification or processing of any registrant . . . ." I take the phrase "classification or processing" to encompass the numerous discretionary, factual, and mixed law-fact determinations which a Selective Service Board must make prior to issuing an order to report for induction. I do not understand that phrase to prohibit review of a claim, such as that made here by petitioner, that the very statutes or regulations which the Board administers are facially invalid.

"Classification is the key to selection," 32 CFR § 1622.1 (b), and among a local Board's most important functions is "to decide, subject to appeal, the class in which each registrant shall be placed." 32 CFR § 1622.1 (c). Classification is a highly individualized process, in which a Board must consider all pertinent information presented to it. *Ibid.* Thus, a Board may be required to determine, on a conflicting record, whether a registrant is conscientiously opposed to participation in war in any form, 32 CFR § 1622.14, or whether the registrant's deferment "is in the national interest and of paramount importance to our national security . . . ." 32 CFR § 1622.20. A Board also exercises considerable discretion in the processing of registrants—for example, in securing information relevant to classification, 32 CFR §§ 1621.9–1621.15, scheduling of physical examinations, 32 CFR, pt. 1628, and scheduling and postponement of induction itself, 32 CFR, pt. 1632.

Congress' decision to defer judicial review of such decisions by the Selective Service Boards until after induction was, I believe, responsive to two major considerations. *First,* because these determinations are of an individualized and discretionary nature, a reviewing court must often examine Board records and other docu-

mentary evidence, hear testimony, and resolve controversies on a sizable record. Even though the scope of judicial review is narrow, see *Estep* v. *United States, supra,* at 122–123, this cannot be done quickly. To stay induction pending such review would work havoc with the orderly processing of registrants into the Nation's armed forces. See 113 Cong. Rec. 15426 (Senator Russell); cf. *Estep* v. *United States, supra,* at 137 (Mr. Justice Frankfurter, concurring in the result).

*Second,* the registrant has been afforded, prior to his induction, the opportunity for a hearing and administrative appeals within the Selective Service System. 32 CFR, pts. 1624–1627. It is properly presumed that a registrant's Board has fully considered all relevant information presented to it, and that it has classified and processed him regularly, and in accordance with the applicable statutes and regulations. *Greer* v. *United States,* 378 F. 2d 931 (1967); *Storey* v. *United States,* 370 F. 2d 255 (1966); cf. *United States* v. *Chemical Foundation,* 272 U. S. 1, 14–15 (1926); *Chin Yow* v. *United States,* 208 U. S. 8, 12 (1908); *Martin* v. *Mott,* 12 Wheat. 19 (1827).

These factors are significantly altered where the registrant contends that the procedure employed by the Board is invalid on its face.

*First,* such a claim does not invite the court to review the factual and discretionary decisions inherent in the "classification or processing" of registrants, and does not, therefore, present opportunity for protracted delay. To be sure, collateral factual determinations—for example, whether the registrant was subjected to the statute or regulation drawn in question (in this case, the delinquency reclassification procedure)—may sometimes be necessary. But, in general, a court may dispose of a challenge to the validity of the procedure on the plead-

ings. Insubstantial claims can usually be weeded out with dispatch.[2]

*Second,* a challenge to the validity of the administrative procedure itself not only renders irrelevant the presumption of regularity,[3] but also presents an issue beyond the competence of the Selective Service Boards to hear and determine. Adjudication of the constitutionality of congressional enactments[4] has generally been thought beyond the jurisdiction of administrative agencies. See *Public Utilities Comm'n* v. *United States,* 355 U. S. 534, 539 (1958); *Engineers Public Service Co.* v. *SEC,* 78 U. S. App. D. C. 199, 215–216, 138 F. 2d 936, 952–953 (1943), dismissed as moot, 332 U. S. 788. The Boards have no power to promulgate regulations, and are not expressly delegated any authority to pass on the validity of regulations or statutes. Such authority cannot readily be inferred, for the composition of the Boards, and their administrative procedures, render them wholly unsuitable forums for the adjudication of these matters: local and appeal Boards consist of part-time, uncompensated members, chosen ideally to be representative of the

---

[2] Moreover, a court should be hesitant to grant a preliminary injunction staying induction except upon a strong showing that the registrant is likely to succeed on the merits.

[3] A suggestive analogy may be found in the Court's construction of the civil rights removal statute, 28 U. S. C. § 1443. Where state statutory procedure is valid on its face, it is presumed that the state courts will treat a defendant fairly, and removal is not permitted. *Georgia* v. *Rachel,* 384 U. S. 780, 803–804 (1966); *Virginia* v. *Rives,* 100 U. S. 313, 321–323 (1880). But, subject to qualifications not here pertinent, a defendant may remove the cause when the state statutory procedure is facially invalid: "When a statute of the State denies his right, or interposes a bar to his enforcing it, in the judicial tribunals, the presumption is fair that they will be controlled by it in their decisions . . . ." *Id.,* at 321. See also *Greenwood* v. *Peacock,* 384 U. S. 808 (1966).

[4] It may be noted that the Selective Service System urges that the delinquency reclassification provisions have been approved by Congress. Brief for the Respondents 71.

registrants' communities; [5] the fact that a registrant may not be represented by counsel in Selective Service proceedings, 32 CFR § 1624.1 (b), seems incompatible with the Boards' serious consideration of such purely legal claims. Indeed, the denial of counsel has been justified on the ground that the proceedings are nonjudicial. *United States* v. *Sturgis,* 342 F. 2d 328, 332 (1965), cert. denied, 382 U. S. 879; cf. *United States* v. *Capehart,* 141 F. Supp. 708, 719 (1956), aff'd, 237 F. 2d 388 (1956), cert. denied, 352 U. S. 971.

To withhold pre-induction review in this case would thus deprive petitioner of his liberty without the prior opportunity to present to *any* competent forum—agency or court—his substantial claim that he was ordered inducted pursuant to an unlawful procedure. Such an interpretation of § 10 (b)(3) would raise serious constitutional problems,[6] and is not indicated by the stat-

---

[5] See 32 CFR §§ 1603.3, 1604.22; Memorandum from General Hershey, S. Doc. No. 82, 89th Cong., 2d Sess., 4; Weekly Compilation of Presidential Documents, March 13, 1967, p. 395; Report of the National Advisory Commission on Selective Service 74–79 (1967).

Although each local Board has assigned to it a part-time, uncompensated appeal agent—"whenever possible, a person with legal training and experience," 32 CFR § 1604.71 (c)—his pertinent responsibilities to the Board are limited to assisting its members by "interpreting for them laws, regulations, and other directives," 32 CFR § 1604.71 (d)(4), and he must be "equally diligent in protecting the interests of the Government and the rights of the registrant in all matters." 32 CFR § 1604.71 (d)(5).

[6] It is doubtful whether a person may be deprived of his personal liberty without the prior opportunity to be heard by some tribunal competent fully to adjudicate his claims. Cf. *Kwong Hai Chew* v. *Colding,* 344 U. S. 590, 596–598 (1953); *Opp Cotton Mills, Inc.* v. *Administrator,* 312 U. S. 126, 152–153 (1941); *United States* v. *Illinois Central R. Co.,* 291 U. S. 457, 463 (1934); *Londoner* v. *City and County of Denver,* 210 U. S. 373, 385 (1908); *Dixon* v. *Alabama State Board of Education,* 294 F. 2d 150 (1961). But cf. *Ewing* v. *Mytinger & Casselberry, Inc.,* 339 U. S. 594 (1950); *Bowles* v. *Willingham,* 321 U. S. 503, 520 (1944); *North American*

ute's history,[7] language, or purpose. On the foregoing basis I agree that § 10 (b)(3) does not forbid pre-induction review in this instance.

---

*Cold Storage Co.* v. *Chicago,* 211 U. S. 306 (1908). The validity of summary administrative deprivation of liberty without a full hearing may turn on the availability of a prompt subsequent hearing, cf. U. S. Const., Amdt. VI; *United States* v. *Ewell,* 383 U. S. 116, 120 (1966); *Freedman* v. *Maryland,* 380 U. S. 51 (1965)—something not made meaningfully available to petitioner here, either by the option of defending a criminal prosecution for refusing to report for induction, see *Ex parte Young,* 209 U. S. 123 (1908); *Oklahoma Operating Co.* v. *Love,* 252 U. S. 331 (1920); cf. *Reisman* v. *Caplin,* 375 U. S. 440 (1964), or by filing a petition for a writ of habeas corpus after induction. See *ante,* at 235–236; *Estep* v. *United States, supra,* at 129–130 (concurring opinion of Mr. Justice Murphy).

The problem is exacerbated by petitioner's nonfrivolous argument that induction pursuant to the delinquency reclassification procedure constitutes "punishment" for violation of collateral regulations, without jury trial, right to counsel, and other constitutional requisites. See *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144, 168–169 (1963). It is not necessary to decide this issue. If petitioner's claim is valid, however, then postponement of a hearing until after induction is tantamount to permitting the imposition of summary punishment, followed by loss of liberty, without possibility of bail, until such time as the petitioner is able to secure his release by a writ of habeas corpus. This would, at the very least, cut against the grain of much that is fundamental to our constitutional tradition. Cf. Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1380–1383 (1953).

[7] The salient parts of the statute's sparse legislative history are set out in my Brother STEWART's dissenting opinion, *post,* at 247–248. Both the House and Senate committees were "disturbed by the apparent inclination of some courts to review the classification action of local or appeal Boards before the registrant had exhausted his administrative remedies." H. R. Rep. No. 267, 90th Cong., 1st Sess., 30 (1967); S. Rep. No. 209, 90th Cong., 1st Sess., 10 (1967). As I have discussed in the preceding text, the Boards can provide no remedy for a registrant's claim that the regulations or statutes are themselves invalid. (This is not to say that a registrant making such a claim may come into court before he has exhausted his administrative appeals, for the System may decide in his favor on other

Because both the District Court and the Court of Appeals passed on the merits of petitioner's challenge to the delinquency reclassification regulations, this issue is ripe for our consideration. Whatever validity the procedure may have under other circumstances, I agree that the delinquency reclassification of petitioner for failure to possess his registration certificate is inconsistent with petitioner's conceded statutory exemption as a student of the ministry.

MR. JUSTICE STEWART, with whom MR. JUSTICE BRENNAN and MR. JUSTICE WHITE join, dissenting.

It is clear that in enacting § 10 (b)(3) of the Military Selective Service Act of 1967,[1] Congress intended to

grounds, obviating the need for further review. Cf. my dissent in *Public Utilities Comm'n* v. *United States, supra,* at 549–550; *Aircraft & Diesel Equipment Corp.* v. *Hirsch,* 331 U. S. 752, 772 (1947). Petitioner here has exhausted available remedies. Appendix 4.)

Section 10 (b)(3) was likely precipitated by the Second Circuit's well-publicized decision in *Wolff* v. *Selective Service Bd.,* 372 F. 2d 817 (1967). See dissenting opinion of MR. JUSTICE STEWART, *post,* at 247; Brief for Respondent 18, n. 4, 69, n. 32. *Wolff,* as well as the other "recent cases" to which the committee reports probably referred, and this Court's decisions construing the antecedent to § 10 (b)(3), all involved claims that the Selective Service Boards had maladministered or misapplied the applicable statutes or regulations, and not challenges to the validity of the laws themselves. *Wolff* v. *Selective Service Bd., supra* (loss of deferment for participating in demonstration); *Townsend* v. *Zimmerman,* 237 F. 2d 376 (1956) (failure to follow proper appeal procedure); *Schwartz* v. *Strauss,* 206 F. 2d 767 (1953) (concurring opinion) (misclassification); *Ex parte Fabiani,* 105 F. Supp. 139 (1952) (refusal to recognize foreign medical school for deferment); *Tomlinson* v. *Hershey,* 95 F. Supp. 72 (1949) (refusal to hear request for deferment); *Estep* v. *United States, supra* (entitlement to ministerial exemption); *Falbo* v. *United States,* 320 U. S. 549 (1944) (entitlement to conscientious objector status).

[1] 50 U. S. C. App. § 460 (b)(3) (1964 ed., Supp. III). The Act amends and supersedes the Universal Military Training and Service Act.

specify the exclusive methods by which the determinations of Selective Service Boards may be judicially reviewed. Since under the terms of that provision the present suit is plainly premature, I would affirm the judgment of the Court of Appeals.

Section 10 (b)(3) provides in pertinent part as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction . . . ."

It is unquestioned that the overriding purpose of this provision was "to prevent litigious interruptions of procedures to provide necessary military manpower." [2]  To be sure, the provision is somewhat inartistically drawn, but its background and legislative history clearly resolve whatever difficulties might otherwise be presented by the imprecision of the draftsman's language.

In interpreting the less explicit terms of predecessor statutes,[3] this Court had established the general rule that draft classifications could not be judicially reviewed prior to the time a registrant was to be inducted. Review was held to be proper only when challenges to such determinations were raised either (1) in defense to a criminal prosecution following a refusal to be inducted, or (2) in habeas corpus proceedings initiated after induc-

---

[2] 113 Cong. Rec. 15426 (1967) (Senator Russell).

[3] See § 10 (a)(2) of the Selective Training and Service Act of 1940, 54 Stat. 893:

"[D]ecisions of . . . local boards shall be final except where an [administrative] appeal is authorized . . . ."

See also *Estep* v. *United States,* 327 U. S. 114, 119, 123–125.

tion.  See *Witmer* v. *United States*, 348 U. S. 375, 377; *Estep* v. *United States*, 327 U. S. 114; *Billings* v. *Truesdell*, 321 U. S. 542; *Falbo* v. *United States*, 320 U. S. 549.

Occasionally, however, other federal courts had allowed exceptions to this rule.[4]  Section 10 (b)(3) was proposed and enacted shortly after the Court of Appeals for the Second Circuit had, in the well-publicized case of *Wolff* v. *Selective Service Bd.*, 372 F. 2d 817, permitted just such an exception.[5]  In adopting the section Congress specifically disapproved those decisions that had deviated from the rule against pre-induction review, and made explicit its absolute commitment against premature judicial interference with the orderly processing of registrants.  The Senate Armed Services Committee put the matter this way:

> "Until recently, there was no problem in the observance of the finality provision.  In several recent cases, however, district courts have been brought into selective service processing prematurely.  The committee attaches much importance to the finality provisions and reemphasizes the original intent that judicial review of classifications should not occur until after the registrant's administrative remedies have been exhausted and the registrant presents himself for induction."[6]

A similar statement of intent was included in the report of the House Armed Services Committee:

> "The committee was disturbed by the apparent inclination of some courts to review the classification

---

[4] See *Townsend* v. *Zimmerman*, 237 F. 2d 376; *Schwartz* v. *Strauss*, 206 F. 2d 767 (concurring opinion); *Ex parte Fabiani*, 105 F. Supp. 139; *Tomlinson* v. *Hershey*, 95 F. Supp. 72.

[5] In *Wolff* the court allowed pre-induction review of the reclassification of two students who had demonstrated against the hostilities in Vietnam.

[6] S. Rep. No. 209, 90th Cong., 1st Sess., 10 (1967).

action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System." [7]

Although the language of § 10 (b)(3) contains no explicit reference to habeas corpus as a remedy for inductees seeking to challenge their classifications, that remedy was plainly recognized and approved by Congress. The section provides for review "after the registrant has responded *either affirmatively or negatively* to an order to report for induction . . . ." (Emphasis added.) The remedy for one who responds affirmatively cannot, of course, be by way of "defense to a criminal prosecution" for refusing to be inducted; the only remedy in such a case is habeas corpus, and the Senate Committee Report made quite clear Congress' understanding in this regard:

> "A registrant who presents himself for induction may challenge his classification by seeking a writ of habeas corpus after his induction. If the registrant does not submit to induction, he may raise as a defense to a criminal prosecution the issue of the legality of the classification." [8]

---

[7] H. R. Rep. No. 267, 90th Cong., 1st Sess., 30–31 (1967).

[8] S. Rep. No. 209, *supra,* at 10.

Thus there can be no doubt that § 10 (b)(3) was designed to permit judicial review of draft classifications only in connection with criminal prosecutions or habeas corpus proceedings. Today, however, the Court holds that § 10 (b)(3) does not mean what it says in a case like this, where it is "plain on the record and on the face of the Act that an exemption ha[s] been granted." [9] In such a case, it is said, there is a "clash" between the exemption and the provisions of § 10 (b)(3). With all respect, I am simply unable to perceive any "clash" whatsoever. Exemptions from service are substantive, while § 10 (b)(3) is purely procedural, specifying *when* substantive rights may be asserted. How the Court can conclude that the provisions of § 10 (b)(3) somehow do "violence to" the divinity student exemption is a mystery to me.[10]

---

[9] The Court seems to limit its holding to statutory "exemptions"; yet "deferments" may just as "plainly" preclude a registrant's induction. See, *e. g.*, 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. III); 32 CFR § 1622.25 (1968) (full-time college students).

[10] A different ground for permitting review in the present case is set out in the separate opinion of my Brother HARLAN. His opinion is founded on the proposition that constitutional problems would be presented by a system that "deprive[d] petitioner of his liberty without the prior opportunity to present to *any* competent forum—agency or court—his substantial claim that he was ordered inducted pursuant to an unlawful procedure." MR. JUSTICE HARLAN seeks to avoid such difficulties by viewing § 10 (b)(3) as intended to prohibit, not all delays in the processing of registrants, but merely those protracted delays that result from judicial consideration of factual claims.

As the absence of any exception in its terms indicates, however, § 10 (b)(3) plainly was intended to prevent any interruption whatever of the orderly processing of registrants. There is not a glimmer of evidence in the section's legislative history that Congress intended to prevent some sorts of delay but not others. Moreover, it is difficult to reconcile the distinction MR. JUSTICE HARLAN seeks to draw—between claims "that the procedure employed by the Board

The only other reason the Court offers for its casual disregard of § 10 (b)(3) is the suggestion that obedience to the statute would lead to "unnecessary harshness." But if the statute is constitutional, we have no power to disregard it simply because we think it is harsh. That is a judgment for Congress, not for us. And the Court does not question the law's constitutionality.[11] To the

is invalid on its face" and challenges to a Board's factual determinations—with his recognition that the enactment of § 10 (b)(3) was in substantial part a congressional reaction to the Second Circuit's decision in *Wolff* v. *Selective Service Bd.,* 372 F. 2d 817. *Wolff* involved no factual dispute whatsoever; rather, that decision held that, on the basis of admitted facts, the "delinquency" reclassification of the registrants there involved had been entirely unauthorized under both the statute and the applicable regulations.

Nor can I view the constitutional theory suggested by my Brother HARLAN as presenting a justifiable ground for decision. It is noteworthy, first of all, that no such theory has ever been advanced by the petitioner. Furthermore, persons arrested for criminal offenses are routinely deprived of their liberty—to a greater extent than are military inductees—without any prior opportunity for the adjudication of legal or constitutional claims, and often without any hope of securing release on bail. Preliminary hearings before magistrates, by and large, determine only the existence of a prima facie case for the prosecution, and do not begin to reach defenses that might be raised, whether factual, legal, or constitutional. Nor does § 10 (b)(3) necessarily compel deprivation of liberty. A registrant in the petitioner's position is free to refuse induction, keeping open the option of raising his claims should a criminal prosecution be brought against him. And it is entirely possible, of course—and more than likely in the petitioner's case—that no such prosecution will ever be instituted.

[11] The petitioner suggests that where the action of a draft board is challenged as a violation of freedom of speech, the postponement of judicial review until after the scheduled time of induction might have a "chilling effect" upon First Amendment activity. But petitioner's complaint presents no bona fide First Amendment issue. His alleged return of his registration certificate to the Government would not be protected expression. *United States* v. *O'Brien,* 391 U. S. 367.

contrary, the constitutionality of § 10 (b)(3) is upheld this very day in *Clark* v. *Gabriel, post,* p. 256, in reaffirmation of several previous decisions in which this Court has enunciated and applied the rule against pre-induction review of Selective Service determinations.[12]

The Court states that its "construction leaves § 10 (b)(3) unimpaired in the normal operations of the Act." The implication seems to be that the present case is somehow exceptional. But the Court has carved out an "exception" to § 10 (b)(3) in exactly the kind of case where, in terms of the interests at stake, an exception seems least justified. The registrant with a clear statutory exemption is precisely the one least jeopardized by the procedural limitations of § 10 (b)(3). For, as the Government has acknowledged, "the Department of Justice would not prosecute [such a registrant] if he refuses to be inducted, and would promptly confess error if he submits to induction and brings a habeas corpus action." [13]

It is upon those registrants, rather, whose rights are *not* so clear that the burden of § 10 (b)(3) most harshly falls. For it is they who must choose whether to run the serious risk of a criminal prosecution or submit to

---

[12] In *Falbo* v. *United States,* 320 U. S. 549, 550, for instance, a registrant who had not reported for induction sought review of his classification, claiming—as the petitioner claims here—"that he was entitled to a statutory exemption from all forms of national service . . . ." In refusing to permit judicial review, the Court, through MR. JUSTICE BLACK, stated:

"Even if there were, as the petitioner argues, a constitutional requirement that judicial review must be available to test the validity of the decision of the local board, it is certain that Congress was not required to provide for judicial intervention before final acceptance of an individual for national service." *Id.,* at 554.

See also *Witmer* v. *United States,* 348 U. S. 375, 377; *Estep* v. *United States,* 327 U. S. 114; *Billings* v. *Truesdell,* 321 U. S. 542.

[13] Brief for Respondents 70, n. 33.

induction with the uncertain hope of prevailing in a habeas corpus proceeding. Yet the Court has made plain today in *Clark* v. *Gabriel, supra,* that a registrant whose exemption from service is not clear will under § 10 (b)(3) be put to just such a fateful choice. In light of *Gabriel,* the allowance of pre-induction review in the present case thus stands as all the more irrational and unjustified.

I respectfully dissent.