**1st Lt. Richard G. CONWAY, M.D.,**
**Petitioner-Appellant,**

**v.**

**Lt. General A. D. SURLES, Commanding General, Sixth United States Army, Presidio of San Francisco, California; Hon. Robert Froehlke, Secretary of the Army, Respondents-Appellees.**

**No. 72–1050.**

United States Court of Appeals,
Ninth Circuit.

Feb. 5, 1973.

Rehearing Denied March 2, 1973.

---

Michael H. Weiss (argued), John T. Hansen, of Hansen, Jaffe & Weiss, San Francisco, Cal., for petitioner-appellant.

Stephen D. Petersen, Capt., Staff Army Judge Advocate (argued), San Francisco, Cal., James L. Browning, U. S. Atty., F. Steele Langford, John Cooney, Asst. U. S. Attys., San Francisco, Cal., for respondents-appellees.

Before TRASK and CHOY, Circuit Judges, and ANDERSON,* District Judge.

CHOY, *Circuit Judge*:

Conway appeals from the district court's denial of a petition for a writ of habeas corpus. Conway, a physician, requested that his draft board classify him as a conscientious objector. The request was denied and he was classified I–A on May 25, 1971. That decision was affirmed by the appeals board. Conway contended that the classification was erroneous, but since he had exhausted all appeals within the Selective Service System he was ordered for induction.

Attached to the induction order was a letter from the Army informing Conway that if he desired to volunteer for a commission as a reserve commissioned officer in the Army Medical service, he could apply for it. Conway's induction was held in abeyance while he considered applying for the commission. Conway decided to apply for the commission rather than be inducted. On November 30, 1971 he accepted the appointment tendered by the President through the Army and took the oath of office.

Six days later Conway filed the petition for a writ of habeas corpus alleging that he was in the custody of the U. S. Army unlawfully by reason of his improper classification by the Selective Service System. The district court dismissed the petition after concluding that section 10(b)(3) of the Selective Service Act [50 U.S.C.App. § 460] precluded any judicial review in this case. The relevant portion of the Act states:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work."

The district court concluded that by accepting the commission Conway had neither "affirmatively or negatively" responded to the order to report for induction and therefore was barred from the use of the writ. We disagree with this interpretation of § 10(b)(3) because it is inconsistent with the Congressional intent behind the statute.

■ The Supreme Court has in the past decided that this section cannot sustain a literal reading. Oestereich v. Selective Service Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 417, 21 L.Ed.2d 402 (1968).[1] However, the difficulties presented by the imprecision of the draftsman's language can be resolved by

---

* The Honorable J. Blaine Anderson, United States District Judge for the District of Idaho, sitting by designation.

1. "No one, we believe, suggests that § 10 (b)(3) can sustain a literal reading. For

while it purports on its face to suspend the writ of habeas corpus as a vehicle for reviewing a criminal conviction under the Act, everyone agrees that such was not its intent." *Oestereich, supra*, at 238, 89 S. Ct. at 417.

a review of the section's background and legislative history. *Oestereich, supra* at 246, 89 S.Ct. 414 (Stewart, J., dissenting). Congress passed this section in an attempt to prevent the judiciary from entering into the selective service classification processes at a premature stage. "Both the House and Senate committees were 'disturbed by the apparent inclination of some courts to review the classification action of local or appeal Boards before the registrant had exhausted his administrative remedies.'" *Oestereich, supra* at 244, fn. 7, 89 S.Ct. at 420 (Harlan, J., concurring).[2]

Thus "§ 10(b)(3) is purely procedural, specifying when substantive rights may be asserted." *Oestereich, supra* at 249, 89 S.Ct. at 423, (Stewart J., dissenting). Congress inserted the clause "after the respondent has responded either affirmatively or negatively to an order to report for induction" to establish at what time it would be appropriate for a court to intervene. Congress was not attempting to limit the scope of judicial review. The statute only limits preinduction review.[3]

■ Conway did exhaust his administrative remedies. Granting his habeas corpus petition would not do violence to the finality provision embodied in § 10(b)(3). Conway's acceptance of a commission after the receipt of an induction order was an affirmative response to the induction order and judicial review of his classification at this time is not precluded by § 10(b)(3).

■ However, this does not necessarily mean that his petition should be granted. A writ of habeas corpus is available only when a petitioner is being unlawfully detained. The Army contends that even if Conway's induction order were invalid, it could lawfully continue to detain him. The Army maintains that the basis for its detention is not the allegedly invalid induction order, but rather Conway's voluntary application for and acceptance of a commission.

■ Conway, however, contends that the Army would not have tendered him a commission had he not been selected for induction; nor would he have accepted the commission, but for the compulsion of the induction order that he contends is illegal.

Army regulations seem to support Conway's first contention that the tender of his commission was contingent on the existence of an outstanding, valid in-

---

2. The legislative history clearly shows Congress's motivation in enacting this section. The Senate Armed Services Committee stated that "[u]ntil recently, there was no problem in the observance of the finality provision. In several recent cases, however, district courts have been brought into selective service processing prematurely. The committee attaches much importance to the finality provisions and *reemphasizes the original intent that judicial review of classifications should not occur until after the registrant's administrative remedies have been exhausted* and the registrant presents himself for induction." (emphasis added) S.Rep.No.209, 90th Cong., 1st Sess., 10 (1967).

A similar statement of intent was included in the report of the House Armed Services Committee:

"The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly pre-

cludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System." H.R.Rep.No.267, 90th Cong., 1st Sess., 30–1 (1967), U.S. Code Cong. & Admin.News 1967, p. 1333.

3. In certain extreme cases such as *Oestereich, supra* the statute has been construed so as not to preclude even pre-induction review. But it is clear that pre-induction review would not have been permissible in the instant case. Fein v. Selective Service Board. No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).

duction order.[4]  If so, then we think there would be a sufficient connection between his present detention and his induction order, so that an invalid induction order would taint his detention.

On the record before us we cannot determine that the Army did in fact rely upon the legality of the induction order in effecting the tender of Conway's commission.  Therefore, we remand the case so that the district court can make this determination.[5]  In the light of our disposition of this case it is unnecessary for us to pass on Conway's alternate contention that he would not have accepted the commission but for the compulsion of the induction order; but if necessary this issue could also be considered on remand.

Reversed and remanded.

4. Army Regulation: No. 601–54, Processing and Commissioning of Medical Specialist Registrants.  Ch. 1, 1–1.  Purpose.  This regulation prescribes the procedures to be followed by area commanders and by The Surgeon General as Executive Agent in processing doctors of medicine . . . all of whom are hereinafter referred to as medical specialists *and who are liable for induction* into the Armed Forces under the Military Selective Service Act of 1967 . . . (emphasis supplied).  *See also* paragraphs 1–3, 2–1, 2–6(b), 3–3, 3–4 and 3–8 which also tend to support the conclusion that the offer of the commission to Conway was significantly intertwined with the disputed induction order.

5. The district court will of course also have to find that Conway's classification was improper before his petition could be granted.  We do not consider this aspect of the case.