The **FIRESTONE TIRE & RUBBER COMPANY**

v.

Bernard **SAMOFF**, Regional Director for the Fourth Region of the National Labor Relations Board, Appellant.

No. 15972.

United States Court of Appeals
Third Circuit.

Argued June 16, 1966.

Decided Sept. 2, 1966.

Bernard M. Dworski, Washington, D. C., for appellant.

J. Grant McCabe, III, Philadelphia, Pa., for appellee.

Before GANEY and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

### OPINION OF THE COURT

GANEY, Circuit Judge.

This matter is before us on an appeal from the order of the district court enjoining, at the request of an employer, a Regional Director of The National Labor Relations Board, pending final disposition of the case, from proceeding with a second representation election directed by him pursuant to §§ 9 and 3(b) of the National Labor-Management Relations Act, 29 U.S.C.A. §§ 159, 153(b). The outset or threshold question posed is did the district court have jurisdiction to enjoin the Regional Director from proceeding with that election.

Two labor organizations, Local 384 of the International Brotherhood of Teamsters, and the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO ("United Rubber Workers"), competed with each other to organize a unit of some 114 employees of the Firestone Tire & Rubber Company at the Company's Pottstown, Pa., plant. On .

January 27, 1966, a representation election was conducted among the employees in that bargaining unit consisting of laboratory workers and quality control inspectors. They voted against being represented by either labor organization, 54 to 50 in favor of United Rubber Workers, with 10 ballots being challenged.[1] On February 2, United Rubber Workers filed an objection to the election, claiming that improper employer conduct effected the result of the election. It alleged several factual situations in support of this objection.

While conducting an administrative investigation of this objection, a member of the Regional Director's staff learned that on various dates preceding the election, William W. Madden, "a managerial employee" of the Company, conferred with approximately 18 of the employees eligible to vote in the first election; and that when he spoke with such employees individually, he invited them to his office. In these conferences Madden told the employees that the Company preferred to deal with them directly rather than through a union and gave them reasons why he thought it would be better for them to deal directly with the Company. The investigator did not interview Madden, but counsel for the Company furnished him with a copy of the Company's memorandum concerning Madden's conferences with the 18 employees. On March 31, the Regional Director issued his decision on the United Rubber Workers' objection to the election, set aside the election and directed that a new one be held. His decision in part stated: "On the basis of the substantially admitted evidence, I find that by calling employees away from their normal work stations to the locus of managerial authority for the purpose of urging them to vote against the Union, the Employer interfered with the free choice of employees."

The Company then filed a request with the Board to review the Regional Director's action. An asserted reason for the

request for review was that the Regional Director found nothing coercive or anti-union in what Madden said and his decision was predicated upon two allegedly erroneous findings, namely, that the discussions between Madden and the employees took place away from the employees' normal work station, and at a locus of managerial authority. Additional evidence which the Company wished to offer and be considered by the Regional Director was to the effect that the discussions between Madden and the 18 employees occurred in areas where it was not unusual for the employees to be during each workday of the week. On April 27, the Board denied the request for review as raising no substantial issue warranting such review. Shortly thereafter, the Regional Director notified the Company that the second election would be conducted on May 27, 1966.

On May 19, the Company filed an action in the United States District Court for the Eastern District of Pennsylvania to enjoin the Regional Director from holding the second election for the reasons, among others, that he lacked statutory authority to order a second election, and his direction of a second election without giving the Company a hearing deprived it of its constitutional right to due process of law.[2] The Regional Director filed a motion to dismiss on the ground that the district court lacked jurisdiction over the subject matter of the action and the complaint failed to state a claim upon which relief can be granted.

The district court heard no testimony but after hearing argument, it made findings and conclusions of law. It found that the first election was never declared to be invalid and for that reason concluded that the Regional Director exceeded his statutory authority in directing a second election within twelve months of a prior valid election in violation of § 9(c)(3) of the Act, 29 U.S.C.A. § 159(c)(3). The court also concluded that the Regional Director

---

1. Of these challenges, 9 were by the Union and one by the Company. All ten challenges were sustained.

2. The United Rubber Workers was not made a party to the action.

had violated the Company's constitutional right in not offering it an opportunity to be heard before the second election was directed when material and substantial questions of fact requiring a hearing were alleged by the Company which "may well have altered his decision." Additionally, the court found that "Unless restrained, defendant will proceed with a second election which will cause great expense and interruption of its operations, and if plaintiff continues to communicate with its employees in the manner previously used, the second election will also be set aside." It therefore ruled that it had jurisdiction under § 1337 of Title 28, U.S.C.A., because the action arises under an Act of Congress regulating commerce, and that it had power to enjoin the Regional Director from conducting the second election pending final disposition of the case. As a result, it denied the Regional Director's motion to dismiss the complaint.

■ Unquestionably the Company may have indirect judicial review in this court in connection with either a petition for enforcement or review of an order of the Board made pursuant to § 10(c) of the Act, 29 U.S.C.A. § 160(c), regarding an unfair labor practice charge. American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). In that enforcement or review proceeding the Company may present the same issues, in addition to others, that it raises here. Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); N. L. R. B. v. Clearfield Cheese Co., 322 F.2d 89 (C.A. 3, 1963); N. L. R. B. v. Sun Drug Co., 359 F.2d 408, 414–416 (C.A. 3, 1966). Does the Act, insofar as it has given legally enforceable rights, deprive the district court in this case of its original jurisdiction conferred by 28 U.S.C.A. § 1337?

In but two cass, Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) and McCulloch v. Sociedad Na-

cional (No. 107), 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), "each characterized by extraordinary circumstances",[3] has the Supreme Court sanctioned the exercise by a Federal district court of directly reviewing orders entered in a certification proceeding under the Act. McCulloch v. Sociedad Nacional (No. 107), in which the Supreme Court upheld jurisdiction of a district court to enjoin members of the Board from conducting a representation election, involved "public questions particularly high in the scale of our national interest because of their international complexion". (372 U.S. at 17, 83 S.Ct. at 675.) That case had no conceivable application here.

In the *Kyne* case, relied upon by the Company as sustaining jurisdiction in the district court of the action here involved, the ruling was that a Federal district court had jurisdiction of an original action to set aside a determination by the Board because it was "made in excess of its delegated powers and contrary to a specific prohibition in the Act." (358 U.S. at 188, 79 S.Ct. at 184.) The Court held that "Plainly, this was an attempted exercise of [a] power that had been specifically withheld" by § 9(b) (1) of the Act and that "'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obligation of a right which Congress' has given professional employees, for there is no other means, within their control * * * to protect and enforce that right." (358 U.S. at 189–190, 79 S.Ct. at 184.) Of importance here, it should be noted, that the Board, in its appeal to the Court of Appeals in that case, did not contest the trial court's conclusion that the Board, by including professional with nonprofessional employees in the same bargaining unit, after refusing to determine whether a majority of the professional employees would vote for inclusion in such unit, had deprived those employees of a "right" given them by the Act. Commenting on the *Kyne* exception, the Supreme Court said in Boire

---

3. Boire v. Greyhound Corp., 376 U.S. 473, 479, 84 S.Ct. 894, 898 (1964).

v. Greyhound Corp., supra, 376 U.S. at 481–482, 84 S.Ct. at 899:

"The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act."

■ In the case before us it is not plain that the Board's action was an attempted exercise of a power specifically withheld by the Act. The district court concluded that the Regional Director's direction of a second election was in contravention of the specific command of § 9(c) (3), which provides: "No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held." This ruling presupposes either that the Regional Director has no authority to declare an election invalid, or he had such authority but the Company should have been given a hearing before the first was disregarded. The Act does not, in terms, permit or deny a regional director the authority to set aside a representation election. According to § 102.69(c) of the Board's rules and regulations, a regional director has the power to set aside an election conducted under § 9(c) (1) of the Act when the employer has interfered with the employees' free choice of being represented by a labor organization. It may turn out that he should have named an officer to hold a hearing, but there is no provision in the Act which requires a hearing on objections to an election based on pre-election conduct. The question whether the Constitution required it is not of itself grounds for jurisdiction in the district court. The Regional Director does not concede that it is depriving the Company of a right given it by the Act.

Nor does the absence of jurisdiction in the Federal district courts mean a sacrifice of a right guaranteed to the Company by the Act. There are means within the control of the Company to protect and enforce its asserted rights. After the second election, if the United Rubber Workers is certified as the bargaining agent of the unit of employees in question, the Company, if it is so inclined, may refuse to bargain with that Union and thus set us a situation preliminary to an enforcement or review proceeding in this court. Of course it is possible that in that election the employees will vote against being represented by a Union. In such a case, the question of the incorrectness of the Regional Director's action will become moot.

The district court also concluded that the Company made sufficient allegations and proof of irreparable harm which it will suffer unless the Regional Director is restrained. It can be argued that the indirect judicial review in this court after the second election, even if favorable to the Company, will not provide adequate relief, for the reason that if the second election is permitted to be held, the Company will be required to undergo the expenses and disruption of its operation caused by the election. We need not determine whether those incidental expenses and inconveniences usually accompanying an election constitute irreparable injury warranting jurisdiction.[4] The Company is not really concerned about this type of injury. Its position here is that the Board's denial of the request for review was no more than a refusal to

---

4. But see Boire v. Greyhound Corp., supra, footnote 3; Urethane Corp. of Calif. v. Kennedy, 332 F.2d 564 (C.A.9, 1964); Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (C.A.6, 1962); Norris, Inc. v. N.L.R.B., 85 U.S.App.D.C. 106, 177 F.2d 26 (1949); Heller Bros. Co. v. Lind, 66 App.D.C. 306, 86 F.2d 862 (1936). Also see Boire v. Miami Herald Pub. Co., 343 F.2d 17, 24 (C.A.5, 1965). Cf. Brotherhood of Railway & Steamship Clerks, etc. v. Association, 380 U.S. 650, 667, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

consider the merits of the case. It claims that it was given neither prior notice of the factual issues, the resolution of which was the basis of the Regional Director's decision, nor an opportunity to present evidence favorable to it on those issues before a hearing officer. It specifically disclaims that it is making a protest over any erroneous assessment of the facts or that any assessment of the facts has led to a conclusion which does not comport with law. Thus even if the Regional Director were to be enjoined pending the taking of evidence by a hearing officer, and he thereafter redirected a second election, the Company would be in no better position than it is now as far as election expenses and operational interference are concerned.

Accordingly, the judgment of the district court will be reversed and the matter is remanded to that court with instructions to dismiss the complaint.