**UNITED PARCEL SERVICE, INC.,
et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE,
et al., Defendants.**

Civ. A. No. 81–453.

United States District Court,
D. Delaware.

Oct. 29, 1981.

Arthur G. Connolly, Connolly, Bove & Lodge, Wilmington, Del., for United Parcel Service, Inc., and United Parcel Service of America, Inc.; George P. Williams III, Robert L. Kendall, Jr., and John E. McKeever, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, Del., for Nat. Ass'n of Greeting Card Publishers; Matthew S. Perlman and Richard J. Webber, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., of counsel.

Joseph J. Farnan, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Frances G. Beck, Daniel J. Foucheaux, Jr., and Gerald J. Robinson, Washington, D. C., for U. S. Postal Service.

Sue L. Robinson, Potter, Anderson & Corroon, Wilmington, Del., for Advertisers Distribution Services and Advertisers Postal Service Corp.; James N. Horwood, David R. Straus and John Michael Adragna, Spiegel & McDiarmid, Washington, D. C., of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiffs, United Parcel Service, Inc., a New York corporation, United Parcel Service, Inc., an Ohio corporation, and United Parcel Service of America, Inc., a Delaware corporation (hereinafter collectively "UPS"), brought this action seeking a preliminary and ultimately a permanent injunction preventing the Postal Service from implementing rate changes ordered by decision of the Governors of the Postal Service ("Governors") dated September 29, 1981, and issued September 30, 1981. Presently before the Court are plaintiffs' motion for preliminary injunction and defendants' motion to dismiss.[1] These motions raise several important issues of first impression concerning the proper interpretation of both the ratemaking provisions of the Postal Reorganization Act of 1970 ("Act"), 39 U.S.C. § 101 *et seq.*, and the limits of federal district court jurisdiction under that Act.

### The Postal Reorganization Act

In general terms the Act created the Postal Service as an independent establishment of the Executive Branch of the Government. The Postal Service is directed by an eleven member Board of Governors ("Board") composed of nine Governors appointed by the President, and the Postmaster General and the Deputy Postmaster General, both of whom are appointed by the Governors. 39 U.S.C. § 202. As will be developed more fully, the Governors have some powers not given to the Board and the Board has some powers not given to the Governors. The Act also created a five member Postal Rate Commission ("Commission"). The Commission is a separate independent establishment of the Executive Branch of the Government and carries the initial obligation in ratemaking. *See* 39 U.S.C. §§ 3601, 3622; *National Ass'n of Greeting Card Publishers v. United States Postal Service*, 569 F.2d 570, 603 (D.C.Cir. 1976), *consol'd case vacated and remanded*

---

1. At oral argument held on October 22, 1981, three additional parties were granted leave to intervene without objection. Advertisers Postal Service Corp. ("APS") and Advertisers Distribution Services ("ADS") intervened as defendants and the National Association of Greeting Card Publishers ("NAGCP") intervened as a plaintiff. None of the intervenors raised any legal issues apart from those presented by UPS and the Postal Service.

UPS has also presented an oral motion under Rule 65(a)(2) of the Federal Rules of Civil Procedure for an order consolidating the trial on the merits with the hearing on its motion for a preliminary injunction. In view of the Court's disposition of defendants' motion to dismiss, UPS' motion for consolidation will not be addressed.

on other grounds, 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977).

The Postal Service initiates the ratemaking process by requesting the Commission to submit a recommended decision on changes in a rate or rates of postage if it determines that such changes would be in the public interest and in accordance with the policies of the Act. 39 U.S.C. § 3622(a). The Commission must respond to such a request by submitting a recommended decision on the Postal Service's requested changes to the Governors within ten months after receiving the request.[2] 39 U.S.C. §§ 3622, 3624. If the Commission's recommended decision is not received within ten months, the Governors may adopt temporary rates which may not exceed the requested permanent rates. Such temporary rates remain in effect until terminated by the Governors, but in any event not longer than 150 days after the Commission issues its recommended decision. 39 U.S.C. § 3641.

Upon receiving the Commission's recommended decision the Governors have several options. They may:

1. Approve the recommended decision and order it placed in effect.

2. Allow the recommended decision under protest, and either

 a. seek judicial review, or

 b. return the recommended decision to the Commission for reconsideration and a further recommended decision which would then be retransmitted to the Governors for further action and subject to judicial review in accordance with 39 U.S.C. § 3628.[3]

3. Reject the recommended decision and allow the Postal Service to resubmit its request for reconsideration. That resubmission would result in a further recommended decision which would be retransmitted to the Governors for further action and subject to judicial review in accordance with 39 U.S.C. § 3628.

39 U.S.C. § 3625.

If the Governors adopt the third alternative they may, on consideration of the Commission's further recommended decision, exercise an additional option. If all of the Governors then holding office concur, in writing, and make the required findings of fact, they may modify the Commission's further recommended decision. 39 U.S.C. § 3625(d). If changes are adopted by the Governors under any of these options, the Board then determines the date on which they become effective.[4] 39 U.S.C. § 3625(f).

---

2. The ten-month period may be extended if the Commission determines that the Postal Service has caused it unreasonable delay. 39 U.S.C. § 3624(c)(2).

3. The provisions of section 3628 will be discussed in detail, infra, at 1241–1243.

4. The full text of 39 U.S.C. § 3625 provides:

(a) Upon receiving a recommended decision from the Postal Rate Commission, the governors may approve, allow under protest, reject, or modify that decision in accordance with the provisions of this section.

(b) The Governors may approve the recommended decision and order the decision placed in effect.

(c) The Governors may, under protest, allow a recommended decision of the Commission to take effect and (1) seek judicial review thereof under section 3628 of this title, or (2) return the recommended decision to the Commission for reconsideration and a further recommended decision, which shall be acted upon under this section and subject

to review in accordance with section 3628 of this title.

(d) The Governors may reject the recommended decision of the Commission and the Postal Service may resubmit its request to the Commission for reconsideration. Upon resubmission, the request shall be reconsidered, and a further recommended decision of the Commission shall be acted upon under this section and subject to review in accordance with section 3268 [sic] of this title. However, with the unanimous written concurrence of all of the Governors then holding office, the Governors may modify any such further recommended decision of the Commission under this subsection if the Governors expressly find that (1) such modification is in accord with the record and the policies of this chapter, and (2) the rates recommended by the Commission are not adequate to provide sufficient total revenues so that total estimated income and appropriations will equal as nearly as practicable estimated total costs.

(e) The decision of the Governors to approve, allow under protest, reject, or modify

In enacting this rather complicated system, Congress hoped to achieve two related but somewhat conflicting goals. First and foremost, Congress intended to give the Postal Service, through the Governors, ultimate authority over its revenue, subject only to judicial review. *See, e. g.,* Senate Committee on Post Office and Civil Service, S.Rep.No. 91–912, 91st Cong., 2d Sess. 1–4 (1970) ("Senate Report"). At the same time Congress recognized that some check was necessary to prevent the Governors from setting rates based solely on their anticipated costs without regard for the broader public interest. Seeking to serve both ends simultaneously, Congress created the Commission, a partner in the ratemaking process, as a check on the Governors' power to set rates. *See* Senate Report at 13.

*The Facts*

The instant dispute arises out of such a ratemaking procedure and raises difficult questions as to the degree of control Congress intended each of the partners to exercise. On April 21, 1980, the Postal Service requested the Commission to recommend rate changes for virtually all classes of mail and types of mail service.[5] Most importantly for this case, the Postal Service requested that the rate for the first ounce of first-class mail (*i. e.,* letter mail) be increased from fifteen to twenty cents and that the rates for parcel post mail be increased by an average of 8%.

On February 19, 1981, the Commission issued and transmitted its recommended decision to the Governors. That recommendation suggested, *inter alia,* that the rate for letter mail be increased from fifteen to eighteen cents and the rates for parcel post be increased by an average of 12%.[6] On March 10, 1981, the Governors issued a decision allowing the recommended rates to take effect under protest and returned the recommended decision to the Commission for reconsideration. At the same time, the Board determined that the rates allowed under protest would go into effect on March 22, 1981, and, in fact, the rates did go into effect on that date.

On June 4, 1981, the Commission issued its further recommended decision on reconsideration which affirmed, with one exception not relevant here, its initial recommended decision of February 19, 1981. On June 30, 1981, the Governors issued a decision which rejected the Commission's June 4 recommended decision on reconsideration and retained the changes, including the eighteen-cent letter rate and 12% parcel post increase ordered on March 10, 1981. The Postal Service resubmitted its request for further reconsideration.

a recommended decision of the Commission shall be in writing and shall include an estimate of anticipated revenue and a statement of explanation and justification. The decision, the record of the Commission's hearings, and the Commission's recommended decision shall be made generally available at the time the decision is issued and shall be printed and made available for sale by the Public Printer within 10 days following the day the decision is issued.

(f) The Board shall determine the date on which the new rates, fees, the mail classification schedule, and changes in such schedule under this subchapter shall become effective.

5. Except where indicated the facts are undisputed.

6. The recommendation also contained provisions relating to bulk third-class and so-called second-class "red tag" rates. The Postal Service deemed those provisions not to be recommendations in the sense required by section 3624 and enacted temporary rates for bulk third-class mail which were below the existing rates. Those temporary rates were ultimately extended in the Governors' June 30, 1981, decision until the decision of September 29, 1981, which is the subject of the instant challenge. APS and ADS allege that they are in direct competition with the Postal Service with regard to the bulk third-class rate and that the temporary rates had a devastating impact on their business. The September 29, 1981, decision, whose implementation plaintiffs seek to enjoin, had the effect of raising the bulk third-class rates to approximately the pre-March 10, 1981, level. Although ADS and APS argue that the hardship a preliminary injunction would cause them must be balanced against that which a denial would cause plaintiffs, they assert no claim in this Court with regard to the bulk third-class rates. For the purpose of this opinion the Court will therefore discuss the entire range of rate changes by reference to the rates for the first ounce of first-class mail (letters) and fourth-class parcel post mail.

On September 17, 1981, the Commission issued its recommended decision upon further reconsideration which reaffirmed its recommendations of June 4. On September 30, 1981, the Governors issued a unanimous decision dated September 29, 1981, which ordered the Postal Service to place several changes into effect including a twenty-cent letter rate. No change was ordered for the fourth-class parcel post rate. The Board has determined that those changes will take effect November 1, 1981.

Plaintiffs allege that this chain of events violates the provisions of the Act. More particularly they allege that the Governors were without authority to issue their September 29 order directing that rates for first-class mail different from those recommended by the Commission be placed into effect.

Further, plaintiffs allege that they will be irreparably harmed if the illegally modified rates are allowed to take effect. UPS, a substantial user of first-class mail, estimates that the increased rates would cost it approximately $620,000 a year. Affidavit of R. E. Smith, ¶ 16. That cost could not subsequently be recovered if the rate changes are finally held to be unauthorized by the Act. 39 U.S.C. § 3681. Intervening plaintiff, NAGCP, an association of approximately forty greeting card publishers, alleges that its members' sales are inversely affected by the cost of first-class postage. Affidavit of N.S. Halliday, ¶ 3. In addition, UPS alleges that the Postal Service intends to use the increased revenues from its statutory monopoly of first-class mail to subsidize its fourth-class mail operation in which it competes with UPS. UPS Complaint, ¶ 12.

The September 29 decision purported to modify the Commission's September 17 further recommended decision. Stipulated Exhibit 7 at 2. As explained above, the Governors can only modify a further recommended decision by the Commission if they have previously rejected a recommended decision and the Postal Service resubmitted its request. Plaintiffs do not challenge the procedures followed in reaching the Sep-

tember 29 modification decision; rather, they allege that the Governors' decision of June 30 was not a proper rejection and that the Governors therefore lacked the power to modify on September 29.

The operative section of the June 30 decision stated that:

The Postal Rate Commission's Recommended Decision upon Reconsideration dated June 4, 1981 is rejected. The rate, fee, and classification changes ordered into effect in the Decision of the Governors of March 10, 1981, will remain in force.

Stipulated Exhibit 5 at 16.

Plaintiffs argue that though the Governors purported to reject the Commission's June 4 recommendation, they could not do so while maintaining the earlier rate changes in effect. As plaintiffs read the statute, the Governors have a choice of two options. They can allow a Commission-recommended decision under protest and take advantage of the recommended rates during reconsideration or, if they are willing to forego the higher interim rates, they can reject, allow resubmission and then modify the Commission's further recommended decision. The Governors cannot, however, as they purported to do in their June 30 decision, do both at the same time. Plaintiffs argue that Congress so constructed the statute to ensure that the Governors would not lightly reject the commission's recommendations.

Defendants respond that not only were the Governors not required to roll back the rates to the pre-March 10 level, but in fact they lacked the authority to do so. The only temporary rates authorized by the Act are those adopted pursuant to section 3641. *See* p. 1238 *supra*. Defendants argue that because the March 10 rates originated in a Commission-recommended decision which was allowed under protest, they were therefore permanent rates. Thus, the Governors could only have changed those rates in response to a Commission recommendation and were powerless to do so on June 30. Therefore, defendants argue, the June 30 rejection was effective even though the March 10 rates remained in effect.

Even if accepted, defendants' response does not dispose of plaintiffs' claim. In its most powerful form, plaintiffs' argument does not turn on the existence of the Governors' power to roll back rate increases allowed under protest. Section 3625 can be read so as to require the Governors to choose between allowing under protest and receiving the higher interim rates or rejecting at the time they receive the Commission's initial recommendation.

As noted, section 3625(c) provides that when the Commission transmits a further recommended decision upon reconsideration to the Governors after an allowance under protest, that further recommended decision shall be acted upon under section 3625 and "subject to review in accordance with section 3628. . . ." The concluding reference to section 3628 can be read as limiting the Governors' options. Section 3628, which will be more fully discussed, provides for appellate review of some of the Governors' decisions. More specifically, it provides that a decision "to approve, allow under protest, or modify" a Commission recommendation may be appealed. No appeal is provided from a decision rejecting and resubmitting for further reconsideration. Thus, plaintiffs argue, the Governors cannot allow the Commission's initial recommendation under protest and then reject and allow resubmission of the further recommended decision because the decision to reject and allow resubmission would not then be subject to judicial review. Moreover, the further resubmission is arguably an attempt to alter the balance of power created by the Act whereby the Governors would create a "temporary" source of increased revenue pending ultimate modification of the Commission's further recommended decision without satisfying the stringent requirements for implementing a temporary rate change. *See* note 2 *supra* and accompanying text.

Defendants, on the other hand, read subsection c of section 3625 as giving the Governors the full range of section 3625's options, including that provided by subsection d—rejection and resubmission by the Postal Service—when acting on a further recommended decision. Under that reading, the concluding reference to review in accordance with section 3628 simply means that review will be available if the action taken falls within the scope of section 3628.

In view of the Court's disposition of defendants' jurisdictional objection, the arguments detailed above will not be resolved. They have been set out at some length to provide a necessary background for the jurisdictional discussion to follow. For the purposes of that discussion, it is sufficient to note here that the Act can reasonably be read to support either interpretation.

*Subject Matter Jurisdiction*

Even assuming that plaintiffs are correct in their assertion that the Governors have violated statutorily-prescribed procedures, this Court cannot grant the relief requested because it lacks subject matter jurisdiction. The Act itself precludes district court review of this action by the Governors. Section 3628 of the Act provides:

A decision of the Governors to approve, allow under protest, or modify a further recommended decision of the Commission *may be appealed to any court of appeals of the United States. . . .* The court shall review the decision, in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, except as otherwise provided in this section, on the basis of the record before the Commission and the Governors. The court may affirm the decision or order that the entire matter be returned for further consideration, but the court may not modify the decision. The court shall make the matter a preferred cause and shall expedite judgment in every way. The court may not suspend the effectiveness of the changes, or otherwise prevent them from taking effect until final disposition of the suit by the court. *No court shall have jurisdiction to review a decision made by the Commission or Governors under this chapter except as provided in this section.*

39 U.S.C. § 3628 (emphasis added). As indicated above, plaintiffs challenge a decision of the Governors to modify a further rec-

ommended decision of the Commission. Defendants argue that section 3628 removes jurisdiction over this claim from the district courts and lodges it exclusively in the courts of appeals.

Plaintiffs contend, however, that this Court does have subject matter jurisdiction over this action. They base their argument on two points: first, that the language of section 3628 itself does not preclude district court jurisdiction over the claim presented in this action and that therefore this Court has jurisdiction under 28 U.S.C. § 1339 and 39 U.S.C. § 409(a); and second, that when an agency has clearly exceeded its statutory authority and the statutorily-provided review is inadequate, a district court has jurisdiction to act to prevent the impairment of a statutory right. Each of these contentions will be addressed in turn.

### A. Section 3628

■ Plaintiffs' argument based on the plain meaning of this section can be dismissed fairly quickly. The language of section 3628 indicates congressional intent to limit review of Governors' decisions to the courts of appeals. Plaintiffs rely on the sentence in section 3628 which provides that the court shall review the decision "on the basis of the record before the Commission and the Governors" to argue that Congress did not intend to bar district courts from reviewing action which does not require examination of the administrative record, such as that alleged to be in excess of statutory authority. This argument cannot stand in light of the explicit reference in that same sentence to section 706 of the Administrative Procedure Act, which provides in part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> \* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

\* \* \* \* \* \*

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law. . . .

5 U.S.C. § 706. Congress therefore specifically envisioned that a court of appeals would review not only substantive and procedural challenges to the Governors' actions, but also allegations that those actions exceeded the Governors' statutory authority.

■ Plaintiffs cannot avoid the plain meaning of the words: "[n]o court shall have jurisdiction to review a decision made by the Commission or Governors under this chapter except as provided in this section." 39 U.S.C. § 3628. Congress has the right to limit review of administrative action to a particular court. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958). When there is a special statutory procedure, it is presumed that Congress intended it to be the exclusive means of judicial review. *See City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979). Thus, when the statute limiting review is not ambiguous, a district court cannot exercise jurisdiction. *Dow Chemical Co. v. Costle*, 484 F.Supp. 101, 104–05 (D.Del.1980); *see Amusement and Music Operators Ass'n v. Copyright Royalty Tribunal*, 636 F.2d 531, 533–34 (D.C.Cir. 1980).

■ In addition, the general jurisdictional provisions relied upon by plaintiffs cannot overcome the specific limitation of section 3628. Section 1339 of title 28 merely provides district courts with original jurisdiction over postal service cases,[7] and requires an independent jurisdictional basis. *See O'Connor v. Yezukevicz*, 589 F.2d 16, 18 (1st Cir. 1978). Section 409(a) of the Postal

---

**7.** The section provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service." 28 U.S.C. § 1339.

Reorganization Act, in granting the district courts jurisdiction over actions brought by or against the Postal Service, explicitly excepts actions covered by section 3628.[8] Thus plaintiffs' reliance on these sections to relieve them from the jurisdictional limitation of section 3628 is misplaced.

■ Furthermore, plaintiffs argue that district courts have on occasion enjoined postal rate increases. *E. g., United Parcel Service, Inc. v. United States Postal Service*, 615 F.2d 102 (3d Cir. 1980); *United Parcel Service, Inc. v. United States Postal Service*, 455 F.Supp. 857 (E.D.Pa.1978), *aff'd*, 604 F.2d 1370 (3d Cir. 1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980); *Associated Third Class Mail Users v. United States Postal Service*, 405 F.Supp. 1109 (D.D.C.1975), *aff'd sub nom., National Ass'n of Greeting Card Publishers v. United States Postal Service*, 569 F.2d 570 (D.C.Cir.1976), *vacated on other grounds*, 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977). The cited cases provide no support for plaintiffs' contention that this Court has jurisdiction over this action. The actions challenged in those cases were temporary rates implemented by the Board and were thus not subject to the limitations of section 3628, which applies only to action taken by the Governors in a permanent ratemaking proceeding. *See* 39 U.S.C. § 3641.

■ Plaintiffs nevertheless argue alternatively that even if section 3628 does limit review of this action to courts of appeals, the district courts retain general subject matter jurisdiction to enjoin agency action that clearly violates agency authority when the statutory review procedure would be inadequate. Relying heavily on the cases of *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and *Oestereich v. Selective Service System*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), plaintiffs assert that the Governors have clearly exceeded their authority under the Act, review in the courts of appeals will be inade-

quate to prevent the harm to plaintiffs resulting from the illegal rates, and that therefore this Court has jurisdiction to issue an injunction.

B. The Doctrine of *Leedom v. Kyne* and *Oestereich v. Selective Service System*

In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the National Labor Relations Board ("NLRB") included certain non-professional employees in a bargaining unit for professional employees in violation of the Wagner Act. The NLRB denied a motion to stay the upcoming election and exclude the non-professional employees. After the election, the NLRB issued an order certifying the unit. In a subsequent review of the NLRB's action, the Supreme Court held that even though NLRB orders in certification proceedings are not ordinarily subject to judicial review, under the special circumstances presented, a district court could nevertheless exercise jurisdiction. *Id.* at 189, 191, 79 S.Ct. at 184, 185.

The Court explained that the suit was "not one to 'review,' in the sense of that term as used in the Act, a decision of the [NLRB] made within its jurisdiction." *Id.* at 188, 79 S.Ct. at 184. "Rather," said the Court, "it is one to strike down an order of the NLRB made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* The action taken by the NLRB in including non-professional employees in the bargaining unit constituted a clear violation of the Wagner Act. The Court explained: "Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given." *Id.* at 189, 79 S.Ct. at 184. The Court concluded that it could not "lightly infer that Congress does

---

**8.** The section provides: "*Except as provided in section 3628 of this title*, the United States district courts shall have original but not exclu-

sive jurisdiction over all actions brought by or against the Postal Service . . . ." 39 U.S.C. § 409(a) (emphasis added).

not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." [9] *Id.* at 190, 79 S.Ct. at 185.

Plaintiffs find further support in *Oestereich v. Selective Service System*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). In that case, a ministry student who was exempt from the draft by statute was reclassified 1–A after he had protested against the Vietnam War by returning his registration certificate. The district court dismissed his complaint because the statute precluded pre-induction review of draft classifications; the court of appeals affirmed. *Id.* at 234–35, 89 S.Ct. at 415. The Supreme Court reversed and remanded the case to the district court, holding that the court had jurisdiction to review the challenge. *Id.* at 239, 89 S.Ct. at 417.

The Court noted that the Government had admitted for purposes of the proceeding that the student qualified for the exemption, *id.* at 235 n.3, 89 S.Ct. at 415 n.3, and that the local Board had no legislative authority to revoke an exemption because of conduct unrelated to the exemption. *Id.* at 237, 89 S.Ct. at 416. A literal reading of the statute would have limited the student's remedies to two choices: seeking a writ of habeas corpus after induction, or raising the exemption as a defense to a criminal prosecution for defying induction. Such a reading, said the Court, would "construe the Act with unnecessary harshness." *Id.* at 238, 89 S.Ct. at 416–417. The Court held that where it was confronted by a "basically lawless" local draft board which had clearly departed from its statutory mandate, the District Court had jurisdiction to review the challenge.[10] *Id.* at 237–39, 89 S.Ct. at 416–17.

Plaintiffs insist that their challenge to the Governors' action falls within the scope of the doctrine of *Kyne* and *Oestereich*. They assert that review in the courts of appeals is inadequate, and that the challenged violation is clearly in excess of the authority granted the Governors by the Act. It appears that both of these elements—inadequacy of review and clearly *ultra vires* agency action—must be present before this Court can properly exercise jurisdiction under the doctrine. The Court must therefore examine each element to determine if plaintiffs have made a sufficient showing to justify the carving out of an exception to the language of section 3628.

### 1. Inadequacy of Review

 It is true that some cases have held that courts retain limited jurisdiction to review agency actions when statutorily-provided review is inadequate. *See City of Rochester v. Bond*, 603 F.2d 927, 935–36 (D.C.Cir.1979); *Ralpho v. Bell*, 569 F.2d 607, 625–26 (D.C.Cir.1977). The standard for inadequacy of review is a fairly high one. "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." [11] *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 300, 64 S.Ct. 95, 97, 88 L.Ed. 61 (1943). Generally the possibility of "sacrifice or obliteration of a right" is present when a statute completely precludes judicial review of agency action, as in *Kyne, supra*, or where the review mechanism provided by statute requires too great a cost to the right, as in *Oestereich, supra*. *See, e.g., Ralpho v. Bell*, 569 F.2d 607, 613 (D.C.Cir.

**9.** Justices Brennan and Frankfurter dissented, arguing that the Wagner Act and its legislative history indicated congressional intent to limit judicial review in order to further the objectives of national labor policy. *See id.* at 191–201, 79 S.Ct. at 185–190.

**10.** Justice Harlan concurred, stressing the lack of any other competent forum of review. *Id.* at 239, 242–43, 89 S.Ct. at 417, 419. Justices

Stewart, Brennan, and White dissented, arguing that Congress had expressly precluded pre-induction review. *Id.* at 245, 247–50, 89 S.Ct. at 420, 421–23.

**11.** This language is cited as "controlling" in *Leedom v. Kyne, supra*, 358 U.S. at 190, 79 S.Ct. at 184.

1977) (under statute, decisions of Micronesian Claims Commission final and conclusive). In contrast to those cases, here there is a specific forum charged with the duty of review—the courts of appeals.

Plaintiffs argue that the courts of appeals cannot protect their rights under the statute for two reasons. First, plaintiffs argue that the courts of appeals could not have acted quickly enough to prevent the rates from going into effect on November 1. At oral argument, counsel for UPS asserted that ordinarily in suits of this type the courts of appeals have taken a year or longer for decision. Plaintiffs apparently conclude that even had they immediately sought review in a court of appeals on September 30, the court would not have rendered a decision by November 1. Second, plaintiffs argue that review in the courts of appeals is inadequate because under section 3628 the courts of appeals cannot enjoin implementation of the challenged rates pending review.[12] Plaintiffs further contend that such an injunction would be essential to preserving their rights under the statute because section 3681 of the Act explicitly forbids recovery of amounts paid under rates later held illegal.[13]

This Court cannot agree that review in the courts of appeals is so inadequate as to obliterate plaintiffs' rights under the statute. Plaintiffs erroneously assume that the courts of appeals are incapable of acting expeditiously. The statute explicitly requires the courts of appeals to act quickly in these cases;[14] the courts' ability to obey such a mandate was recently demonstrated by the Third Circuit Court of Appeals in *Kennecott Corporation v. Smith*, 637 F.2d 181 (3d Cir. 1980). Plaintiff in *Kennecott* challenged the constitutionality of the New Jersey Corporate Takeover Bid Disclosure Law. The complaint was filed in federal District Court on November 21, 1980,[15] and the district court denied a motion for a preliminary injunction and vacated a temporary restraining order on November 25. Plaintiff immediately filed notice of appeal. *Id.* at 183. In view of "the short time requirements for tender offers established by the SEC regulations, [the Court] expedited the appeal and heard argument on the merits of the district court's denial of preliminary injunctive relief on December 11." *Id.* at 184. The decision, remanding the case to the district court for issuance of a preliminary injunction, issued on December 17, 1980, six days later. *Id.* at 181.

In *Kennecott* only 23 days elapsed between filing in the Court of Appeals and issuance of a final decision. In this case, had plaintiffs filed a challenge on September 30 based on the Governor's alleged *ultra vires* action, it is not inconceivable that a court of appeals could have rendered its decision before the November 1 effective date.[16] In a case such as this one, which

---

**12.** The pertinent part of section 3628 reads: "The court may not suspend the effectiveness of the changes, or otherwise prevent them from taking effect until final disposition of the suit by the court." 39 U.S.C. § 3628.

**13.** Section 3681 of the Act provides: "No mailer may be reimbursed for any amount paid under any rate or fee which, after such payment, is determined to have been unlawful after proceedings in accordance with the provisions of section 3628 of this title, or is superseded by a lower rate or fee established under subchapter II of this chapter." 39 U.S.C. § 3681.

**14.** Section 3628 provides: "The court shall make the matter a preferred cause and shall expedite judgment in every way." 39 U.S.C. § 3628.

**15.** The challenge was based on the fact that the federal law governing tender offers required commencement of a tender offer within five days of its announcement, while the New Jersey law prevented commencement of such an offer until twenty days following such an announcement. Plaintiffs asserted that it was impossible to comply simultaneously with both federal and state law. 637 F.2d at 182.

**16.** It is recognized that plaintiffs by challenging only the *ultra vires* action might be held to have abandoned any substantive claim. This of course would be a tactical decision for plaintiffs, who undoubtedly would also consider the probability of other litigants going forward on the merits in the same or another court of appeals. Moreover, the Court recognizes the possibility that a party might seek to intervene in such an action to challenge the ratemaking

has an effect not only on private business, but also on the millions of people who must pay the higher postal rates, the assumption that the courts of appeals would not act expeditiously is particularly unwarranted. The fact that the courts of appeals cannot issue relief *pendente lite* under section 3628 does not render this avenue inadequate, because quick action by the court would have rendered such relief unnecessary.

Even if the courts of appeals could not have acted in time to prevent the November 1 rates from going into effect, the fact that plaintiffs will be unable to recover overpayments if the rates are later struck down does not render appellate review inadequate. Congress weighed the potential harm to ratepayers caused by excessive postal rates against the potential harm to the Postal Service caused by refunding the overpayments, and struck the balance, in section 3681, in favor of the Postal Service. Plaintiffs can point to nothing to indicate that Congress did not intend this limitation to apply when agency action is challenged as *ultra vires* rather than substantively unsound or procedurally irregular. In short, plaintiffs' argument that this Court must exercise jurisdiction because they cannot sue for reimbursement of overpayments would circumvent the explicit congressional prohibition against recovery of such payments.

Furthermore, even if review in the courts of appeals were inadequate, strong policy considerations against bifurcation of review would weigh in favor of limiting review to the courts of appeals. Substantive challenges to the Postal Service's action are currently pending in the District of Columbia and Second Circuits. As another district court recently noted in a case involving a challenge to temporary postal rates:

> It is clear from the present posture of this litigation that it presents issues which are inextricably interwoven with those now before the Third Circuit ... [T]his Court would be required to assess the merits of these questions in order to grant the relief requested. This would

on substantive grounds. This Court cannot determine whether or not court of appeals would

draw the Court into territory reserved exclusively to the Court of Appeals and in addition violate the "well-settled" principle that "bifurcated jurisdiction between District Court and Court of Appeals over identical litigation is not favored."

*Reader's Digest Ass'n v. United States Postal Service*, 501 F.Supp. 126, 129 (D.D.C. 1980); *see Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 660 (D.C.Cir.1978) (bifurcated jurisdiction under Clean Air Act disfavored). Such a result is certainly possible here, where consideration of the procedural regularity of the Governors' decision may well be an issue before the courts of appeals. In addition, simultaneous review of the same issue in the district and appellate courts could well contravene the policies underlying the statute. *See Investment Company Institute v. Board of Governors of Federal Reserve System*, 551 F.2d 1270, 1278 (D.C.Cir.1977) (precluding parties from contravening Bank Holding Company Act by opting for district court review). If this Court were to enjoin the rate hikes from going into effect at the same time that a circuit court were to uphold the rates, the result would be at best anomalous and, at worst, chaotic, as different parts of the country could well be paying different postage rates.

Plaintiffs conceded at oral argument, and indeed it is clear from section 3628 of the Postal Reorganization Act and section 706 of the Administrative Procedure Act, that the courts of appeals have the power to review their claims. They have not successfully shown that this review would be inadequate. Contrary to plaintiffs' assertions, this holding will not permit the Governors to evade statutory requirements and decide the limits of their own power, because the courts of appeals are available to review its action. *See Assure Competitive Transportation, Inc. v. United States*, 629 F.2d 467, 471–72 (7th Cir. 1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) (Interstate Commerce Commission actions subject to review in court of appeals).

permit intervention in that situation.

## B. Clearly *Ultra Vires* Agency Action

■ Courts have on occasion noted that a court may exercise jurisdiction even in the face of a statutory prohibition of review where there has been a patent violation of agency authority. *See, e. g., Independent Cosmetic Manufacturers and Distributors, Inc. v. United States Department of Health, Education and Welfare,* 574 F.2d 553, 555–56 (D.C.Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Nader v. Volpe,* 466 F.2d 261, 266 (D.C.Cir.1972); *Dow Jones & Co. v. Postal Rate Commission,* 471 F.Supp. 455, 456 (D.D.C.1979). In both *Kyne* and *Oestereich, supra,* the challenged agency actions were clearly *ultra vires* ; that is, the action plainly violated a statutory requirement. *See Leedom v. Kyne, supra,* 358 U.S. at 189, 79 S.Ct. at 184; *Oestereich v. Selective Service System,* 393 U.S. at 235 n.3, 237, 89 S.Ct. at 415 n.3, 416.

Plaintiffs argue that the Governors' June 30 decision was a patent violation of their statutory authority, and that this Court therefore has jurisdiction to review that action. The Court cannot agree. Even assuming that there has been a violation, and that review in the courts of appeals would be inadequate, this Court cannot hold that the Governors' decision plainly violated a statutory requirement. Plaintiffs assert that accepting defendants' position that section 3625 permits the Governors to modify a further recommended decision after having allowed the Commission's initial recommended decision to take effect under protest would be tantamount to reading a fifth option into that section. Defendants counter that acceptance of plaintiffs' position that section 3625 requires the Governors to choose between allowing under protest and accepting the benefits of any interim rate hikes and rejecting so as to be able to modify the Commission's further recommended decision would be tantamount to reading the allowance under protest option

out of the section. Both sides purport to base their arguments on the "plain meaning" of the statute. In view of the Court's disposition of these motions, it need not decide which, if either, "plain meaning" to adopt. For the purposes of the instant motion, it is sufficient to reiterate this Court's earlier observation that reasonable minds can differ. It is by no means "plain that the [agency]'s action was an attempted exercise of power specifically withheld by the Act." *Firestone Tire & Rubber Co. v. Samoff,* 365 F.2d 625, 628 (3d Cir. 1966) (NLRB election order); *see Dunlop v. Bachowski,* 421 U.S. 560, 568, 95 S.Ct. 1851, 1858, 44 L.Ed.2d 377 (1975) (Labor-Management Reporting and Disclosure Act).

■ As noted, section 3628 explicitly lodges exclusive jurisdiction over challenges to permanent postal ratemaking in the courts of appeals. The doctrine of *Kyne* and *Oestereich* is available to grant relief from clearly lawless agency conduct which threatens to leave a plaintiff without effective remedy. It is not intended as an escape hatch for litigants seeking to avoid a congressionally-imposed jurisdictional limitation by alleging *ultra vires* action by an agency. The Court does not decide today whether a plaintiff challenging permanent postal ratemaking could ever make a sufficient showing to fall within this limited exception.[17] On these facts, plaintiffs have not made such a showing.

An Order will be entered granting the motion to dismiss.

---

17. At oral argument, counsel for UPS asserted as such a case a hypothetical situation where the Postal Service completely bypassed the Commission and adopted a 25¢ letter rate. Defendants conceded that such a case would not fall within the restrictions of section 3628 because the challenged action would not be "a decision made by the Commission or Governors under this chapter." *See* 39 U.S.C. § 3628.