Gerald L. BRUMLEY, Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR, Defendant.

No. LR–C–91–529.

United States District Court,
E.D. Arkansas, W.D.

Aug. 3, 1993.

Gerald L. Brumley, pro se.

Margaret Terry, Office of the Sol., U.S. Dept. of Labor, Dallas, TX, and A. Doug Chavis, Asst. U.S. Atty., Little Rock, AR, for defendant.

### ORDER

ROY, District Judge.

By previous order, this Court has made a preliminary declaratory finding that the Secretary of Labor has no statutory authority under the Federal Employees Compensation Act to require earnings reports of persons, like the plaintiff, who are in the total disability category. In subsequently filed pleadings, the government has asked the Court to reconsider this finding, as well the Court's earlier determination that it even has jurisdiction to consider the matter. The Secretary moves for dismissal, or alternatively, for summary judgment. Mr. Brumley urges the Court to stand by its previous determinations on both issues and also moves for summary judgment.

After careful reconsideration of the arguments of both sides, the Court now finds that it is without jurisdiction to consider plaintiff's claim. Accordingly, the defendant's motion to dismiss will be granted.

\* \* \* \* \* \*

The Court sets out below some of the factual information found in the previously issued order:

The plaintiff is a person classified as having "total disability" under the Federal Employee's Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA"). This program is administered by the defendant, the United States Department of Labor.[1] The plaintiff is also entitled to annuity payments pursuant to the Federal Retirement Act, 5 U.S.C. § 8301 *et seq.* ("FERA"). Both FERA and FECA provide that a claimant may not receive benefits from the two programs simultaneously; one must elect from which program he wishes to receive benefits. However, one may generally switch back and forth at his sole discretion as often as desired.

The plaintiff first received benefit payments for temporary total disability on August 8, 1974. For certain periods of time since then, Mr. Brumley elected to receive benefits under FERA from the Office of Personnel Management ("OPM"). However, on or about February 28, 1991, plaintiff informed OPM that he was electing FECA benefits for the period January 5, 1985, through December 30, 1987. Since that time the defendant has not processed Mr. Brumley's election, which has resulted in plaintiff filing this action to compel the Department of Labor to do so. The position the DOL now takes in its briefs is that it is not required to process plaintiff's election of benefits unless and until plaintiff fills out its form "CA–8," which inquires into, among other things, a claimant's employment earnings.

---

1. FECA is a comprehensive workers' compensation law for federal employees that is designed to provide quick and uniform coverage for work-related injuries. *Woodruff v. United States Department of Labor,* 954 F.2d 634 (11th Cir.1992).

The issue Mr. Brumley wishes the Court to address is whether the DOL has statutory authority to require people classified with "total disability" ratings under FECA to report their earnings from employment or self-employment as a condition to their receiving disability benefits under that Act. The defendant's argument in a nutshell is that it has been given by Congress the power to pass whatever regulations it deems necessary to administer its programs and it has the final say on settling disputes, including this one, relating to those regulations. The plaintiff does not dispute in general the Secretary's authority to promulgate such regulations, nor to "decide all questions arising under" same. 5 U.S.C. § 8145.[2] Instead, plaintiff argues that the particular action the defendant would require of the plaintiff is contrary to the intent of Congress and is not authorized by statute.

\*　　\*　　\*　　\*　　\*　　\*

### Exceptions to the Preclusion Rule

As mentioned above, the Department points to § 8145 as its statutory authority to "decide all questions arising under" these Acts. It also points to § 8128(b) as precluding this Court from reviewing its decisions. This preclusion statute reads as follows:

> The action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b). "The language is clear and its meaning unmistakable: *Federal courts have no jurisdiction to review final judgments of the Secretary of Labor* and his officers ..." *Staacke v. United States Secretary of Labor*, 841 F.2d 278, 281 (9th Cir. 1988) (emphasis added).

In *Staacke*, the Court of Appeals for the Ninth Circuit discussed the breadth of this preclusion language, but also discussed two exceptions to the rule.

Significantly, the Supreme Court has singled out section 8128(b) as a model preclusion-of-review statute, noting that Congress uses such "unambiguous and comprehensive" language "when [it] intends to bar judicial review altogether." *Lindahl v. Offense of Personnel Management*, 470 U.S. 768, 779–80 & n. 13 [105 S.Ct. 1620, 1627 & n. 13, 84 L.Ed.2d 674].

\*　　\*　　\*　　\*　　\*　　\*

> Even where the statutory provision absolutely bars judicial review, however, there are two situations where review is nonetheless available: First, courts maintain jurisdiction to consider constitutional claims [citation omitted]; and, second, jurisdiction exists where defendant is charged with violating a clear statutory mandate or prohibition. . . .

*Staacke*, 841 F.2d at 281. *Accord, Woodruff v. Department of Labor*, 954 F.2d 634 (11th Cir.1992); *Sheehan v. United States*, 896 F.2d 1168 (9th Cir.1990); and *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988) ("Except for cases alleging that the Secretary violated a claimant's constitutional rights or exceeded the scope of his congressional mandate, courts have unanimously held that section 8128(b) prohibits judicial review. . . ."). *But see Paluca v. Secretary*, 813 F.2d 524 (1st Cir.1987), *cert. denied sub. nom Roberts v. Secretary of Labor*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987) (holding that though a district court has jurisdiction over constitutional challenges to the Secretary's actions administering FECA, no jurisdiction exists to hear challenges based on statutory grounds).

Therefore, in order for this Court to be able to exercise jurisdiction over the instant case, Mr. Brumley's claim must come under one of these two specific exceptions. Other-

---

2. That statute reads as follows:
   The Secretary of Labor shall administer, and decide all questions arising under, this subchapter [5 U.S.C. §§ 8101 et seq.]. He may—
   (1) appoint employees to administer this subchapter; and

(2) delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter.
5 U.S.C. § 8145.

wise, the Court has no choice but to dismiss his case.

### 1. Constitutional claims

■ Plaintiff argues that though Congress specifically granted the Secretary the authority under 5 U.S.C. § 8106 to order a *partially* disabled employee to report his earnings from employment, any similar grant of authority is conspicuously absent from the companion statute, § 8105, dealing with people determined to have total disability.[3] He argues that the only possible conclusion that can be drawn is that Congress obviously did not want the DOL to have the authority to make such an inquiry, and in fact has withheld that authority from DOL.

The plaintiff has sometimes characterized his objection as a constitutional one; the Department exercising authority not granted by Congress would be a "separation of powers" type violation. However, the Court believes it more appropriate to view Mr. Brumley's complaint as a charge that the DOL has "violat[ed] a clear statutory mandate or prohibition...." *Staacke*, at 281.

If, in the present context, exercising authority withheld by Congress (plaintiff's allegation) is not violating a statutory mandate, then the term has no meaning to this Court. Even if one were to concede that what plaintiff has alleged is technically a constitutional claim as well as a statutory one (as perhaps is true in a broad sense) it clearly is not the type of constitutional claim found in the reported cases.

For example, in *Woodruff*, the plaintiff alleged a deprivation of a property interest without due process, as well as a violation of the separation of powers doctrine due to the government's refusal to follow established caselaw. In *Paluca*, 813 F.2d 524, the 1st Circuit found that jurisdiction existed for the district court to consider the merits of plaintiff's equal protection challenge. Mr. Brumley's allegation is nothing like those.

In the context of determining whether jurisdiction exists in FECA complaints brought in district court, appellate courts clearly recognize a distinction between constitutional claims and "statutory" ones. It is the opinion of this Court that if the distinction is to have any meaning, then what constitutes a constitutional claim must involve more than what Mr. Brumley has alleged in this case. Thus, the Court holds that for this Court to have jurisdiction over this cause, the Court must find that the action of the DOL which plaintiff complains of here violates a "clear statutory mandate or prohibition."

### 2. Clear statutory mandate or prohibition

■ The issue before the Court is a limited one:

> Our task is limited to determining whether the statute in question contains a clear command that the Secretary has transgressed. Where, as here, the statute is capable of two plausible interpretations, the Secretary's decision to adopt one interpretation over the other cannot constitute a violation of a clear statutory mandate.

*Staacke*, 841 F.2d at 282. "Our task is not to develop our own interpretation [of a statute], nor is it to choose the best of two competing interpretations." *Woodruff*, 954 F.2d at 640.

There seems to be little guidance in the reported cases for determining whether certain statutory language constitutes a "clear statutory mandate or prohibition." The Court is tempted to adopt some variation of

---

**3.** The statutes provide:

§ 8105. · Total disability
(a) If the disability is total, the United States shall pay the employee during the disability monthly monetary compensation equal to 66⅔ percent of his monthly pay, which is known as his basic compensation for total disability.
(b) The loss of use of both hands, both arms, both feet, or both legs, or the loss of sight of both eyes, is prima facie permanent total disability.
§ 8106. Partial disability
(a) If the disability is partial, the United States shall pay the employee during the disability monthly monetary compensation equal to 66⅔ percent of the difference between his monthly pay and his monthly wage earning capacity after the beginning of the partial disability, which is known as his basic compensation for partial disability.
(b) The Secretary of Labor may require a partially disabled employee to report his earnings from employment or self-employment, by affidavit or otherwise, in the manner and at the times the Secretary specifies. [remainder of section omitted]

Mr. Justice Stewart's "I know it when I see it" test.[4] Perhaps, "if there is any doubt whether the language is 'clear,' then it isn't."

■ Instead, in making the determination of whether §§ 8105 and 8106 contain a "clear statutory mandate or prohibition" that has been violated, this Court will consider these factors: the specific language of the statutes purporting to limit the defendant's authority, the context in which those statutes appear in the Act as a whole, and the interpretation of those statutes by other courts.

Examples of cases where a "clear statutory mandate" was violated are *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) and *Oestereich v. Selective Service System*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). In *Leedom*, the Supreme Court described as "clear and mandatory" a portion of the National Labor Relations Act governing how units of employees for the purposes of collective bargaining would be determined: "the Board *shall not* decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." Section 9(b) of the Act as quoted in *Leedom* (emphasis added by the *Leedom* court).

Nevertheless, on one occasion the Board took such action anyway after refusing to determine whether a majority would vote for such an arrangement. The Supreme Court found that jurisdiction existed to review, and strike down, this action of the Board. "Plainly, this was an attempted exercise of power that had been specifically withheld." *Leedom*, 358 U.S. at 184, 79 S.Ct. at 180.

In *Oestereich*, the Supreme Court found that jurisdiction existed to review a draft board's decision to deny a draft exemption to a divinity student, despite unequivocal language in the Selective Service Act which providing that "[r]egular or duly ordained ministers ... and students preparing for the ministry ... *shall be exempt* from training and service ... under this title." *Oestereich*, 393 U.S. at 235, 89 S.Ct. at 415, quoting Section 6(g) of the Selective Service Act. In both of those cases one can easily appreciate how clear-cut the language at issue was.

Plaintiff argues that in the instant case, language in §§ 8105 and 8106 purportedly withholding authority from the defendant is just as clear. However, the Court finds that not to be the case. In *Leedom* and *Oestereich*, language like "the board *shall not* decide" and "students ... *shall be exempt*" was used by Congress. In the case before this Court, plaintiff asks the Court to infer a statutory prohibition by the "conspicuous absence" of a grant of authority in § 8105 to require earnings information from those totally disabled.

His position that the DOL is acting without Congressional authority when requiring earnings reports from those with total disabilities is chiefly built around the case of *United States v. Dorey*, 711 F.2d 125 (9th Cir.1983). As this Court wrote in its previous order, in *Dorey* a criminal defendant was charged with violating 18 U.S.C. § 1001[5] by making a false statement in a report "required by section 8106 of Title 5, United States Code."[6] The Ninth Circuit reversed his conviction because it determined that the prosecution had failed to prove that Mr. Dorey was required by law to file a report under § 8106.

In so doing, the Court in *Dorey* compared sections 8105 and 8106. It noted that § 8106(b) says the "Secretary of Labor may

---

**4.** Articulated in his concurring opinion in *Jacobellis v. Ohio*, 378 U.S. 184, 198, 84 S.Ct. 1676, 1684, 12 L.Ed.2d 793.

**5.** 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or represen-

tations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**6.** The plaintiff, Mr. Brumley, is not accused of making false or misleading statements to the Secretary, nor is he charged with any sort of crime.

require a *partially disabled* employee to report his earnings from employment...." (emphasis added) It further noted that "[n]owhere in section 8106 is there any reference to total disability. Section 8105, however, [addresses total disability]." The Court continued:

It is also significant that section 8105, which was enacted on the same date as section 8106, does *not* authorize the Secretary of Labor to require totally disabled person [sic] to report his or her earnings from employment or self-employment. It is obvious then that when Congress wishes to give the Secretary of Labor the authority to require a report of employment from a person receiving benefits, it knows how to do so.

We have no hesitancy in concluding that section 8106 by its terms does not permit the Secretary of Labor to require a temporarily totally disabled person to file a report.

*Dorey,* 711 F.2d at 127–128 (emphasis in original).

Standing alone and read broadly, *Dorey* would suggest at least one Court of Appeals believes the language of §§ 8105 and 8106 to be quite clear regarding whether the Secretary has statutory authority to require earnings reports from those with total disabilities. However, the Ninth Circuit has since written that "*Dorey* is a narrow decision, limited to its own facts." *United States v. Austin,* 817 F.2d 1352, 1354 (9th Cir.1987).

The Court in *Austin* pointed out that defendant Dorey was charged with making a false statement on a "report required by section 8106...." Because § 8106 requires no report from one *totally* disabled, Dorey's conviction was overturned. However, the defendant in *Austin* was simply charged with making a false statement on a form required by the Department of Labor. His conviction was affirmed because, in order to allege a violation of § 1001, "the government is not required to prove that the defendant had a duty under some other statute to disclose." *Id.,* at 1354.

The Ninth Circuit had distinguished *Dorey* the same way in *U.S. v. Olson,* 751 F.2d 1126 (9th Cir.1985) and *U.S. v. DeRosa,* 783 F.2d

1401 (9th Cir.1986). In *Olson,* the Court pronounced that "§ 1001, by itself, required *Olson* to disclose the information he has been accused of withholding." 751 F.2d at 1128; *accord United States v. Kappes,* 936 F.2d 227 (6th Cir.1991).

In *Austin,* the defendant argued on appeal that the trial court had committed error in allowing the introduction into evidence of the Department's operating manual, which presumably directs department officials to require those with temporary total disabilities to submit earnings reports. Austin argued that the manual was in conflict with § 8105. The Ninth Circuit disagreed and emphasized the language of § 8105(a) which states that the employee will be paid monthly compensation *"during the disability."* "Thus, it is implicit in the statutory scheme for the Department to make inquiries to determine whether the disability or dependency has ended." 817 F.2d at 1355.

The Court finds this language of the Ninth Circuit to be significant. It seems a fair inference that that court, while not repudiating *Dorey* entirely, has at least retreated to the position that even if the Department has no right under § 8106 to require earnings reports from those temporarily totally disabled, it can still require them pursuant to an implied authority under § 8105.

\*     \*     \*     \*     \*     \*

In summary, plaintiff wishes the Court to find that §§ 8105 and 8106 of Title 5, United States Code contain a clear, unmistakable statutory mandate or prohibition, within the meaning of applicable caselaw, that forbids the defendant from requiring plaintiff and others similarly situated to report their earnings before their benefits will be paid to them. There is no explicit language to that effect in the statute. Rather, the Court would have to infer the prohibition from the absence of an explicit grant of authority to require said information. The Court will not do so.

Furthermore, the holding in the case the plaintiff chiefly relies on to support his "mandate by inference" theory has subsequently been limited by the deciding court to its own facts. Also, consideration of the Act as a

whole allows a reasonable inference that Congress was aware that some people are only disabled temporarily and the Department would need some sensible means of determining when, or to what degree, those disabilities later ceased. The Court concludes that no clear statutory mandate or prohibition is being violated by the defendant.

Because the plaintiff has neither alleged a substantial constitutional claim, nor properly shown the defendant has violated a clear statutory mandate or prohibition, this Court is without jurisdiction to hear plaintiff's claim. The "master" of the words of 5 U.S.C. §§ 8105 and 8106 is the Secretary, not this Court. It is he who shall supply them with whatever meaning he wishes.[7]

According, it is hereby

ORDERED that the defendant's motions for reconsideration and for dismissal are granted; the plaintiff's motion for summary judgment is denied. All other pending motions are thereby rendered moot.

---

**7.** "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

Lewis Carroll, *Through the Looking–Glass*, (1872)