442

UNITED STATES of America, Plaintiff,

v.

Salvatore MACHI, Defendant.

No. 96 Cr. 734-01 (HB).

United States District Court,
S.D. New York.

May 1, 1997.

Geoffrey R. Kaiser, Assistant U.S. Attorney, New York City, for U.S.

David H. Weiss, New York City, for Defendant.

*OPINION AND ORDER*

BAER, District Judge:

By oral opinion delivered April 2, 1997, I sentenced the defendant for conspiracy to violate and substantive violations of 18 U.S.C. § 1920. The sentence was based in part on a disputed determination of the appropriate offense level under the Sentencing Guidelines. I write now to clarify my reasoning on this issue, which the Second Circuit has yet to address.

Defendant Salvatore Machi pled guilty to a two-count indictment charging him with: (1) conspiracy to falsely represent his employment status in connection with applications for worker's compensation payments in violation of 18 U.S.C. § 1920 and (2) substantive violations of 18 U.S.C. § 1920 for such false representations. The government and defendant disagree as to the appropriate calculation of the offense level under the Sentencing Guidelines. For the reasons discussed below, I adopt defendant's argument and sentence him accordingly.

**I. Background**

The relevant facts are not in dispute. Mr. Machi was employed as a food service foreman for the Department of Veterans Affairs Medical Center until July 1990. Presentence Report at ¶ 10. In July 1990, Mr. Machi filed a claim for worker's compensation under the Federal Employees Compensation Act, 5 U.S.C. § 8101, et seq., based on an alleged lower back injury. *Id.* Mr. Machi continued to work intermittently until December 1990, at which time he suffered a recurrence of his back injury. *Id.* at ¶ 11. From December 1990 to March 1996 Mr. Machi received over $122,000 in worker's compensation payments. *Id.* at ¶ 12. Unbeknownst to the government at the time, Mr. Machi was apparently running various limousine businesses from 1990 to 1996. *Id.* at ¶¶ 20–47.

During the period of his disability, Mr. Machi occasionally filed certain forms with the Office of Workers Compensation Programs ("OWCP"). *Id.* at ¶ 13. The forms request information in order to determine whether there have been any changes in the

claimant's employment or medical status since the filing of the initial claim. *Id.* at ¶¶ 14–15. Mr. Machi repeatedly misrepresented his employment status on these forms by failing to disclose his limousine business. Specifically, in response to questions asking whether Mr. Machi had been self-employed during the relevant periods covered by the forms, Mr. Machi either failed to respond or responded in the negative. *Id.* at ¶¶ 16, 17, 40, 41. The issue in dispute is whether all of Mr. Machi's misrepresentations on these forms from 1990 through 1996 are covered by the indictment to which Mr. Machi has pled guilty.[1]

## II. Discussion

Defendant contends that his conduct in failing to report his self-employment was not criminalized until September 30, 1994, when 18 U.S.C. § 1920—the statute under which Mr. Machi was charged—was amended. The pre-amendment version of Section 1920 reads:

> Whoever makes, *in an affidavit or report required by section 8106* of title 5 or in a claim for compensation under subchapter I of chapter 81 of title 5, a statement, knowing it to be false, is guilty of perjury. . . .

The amended version of the statute reads:

> Whoever knowingly and willfully falsifies, conceals, or covers up a material fact, or makes a false, fictitious, or fraudulent statement or representation, or makes or uses a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry *in connection with the application for or receipt of compensation or other benefit or payment*

under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury. . . .

The principle difference is that the earlier version applies only to false statements made, in an "affidavit or report *required by section 8106* of title 5."[2] By contrast, the new version applies to any fraudulent statement made "in connection with the application for or receipt of" benefits. Defendant argues that because he was not *required* under section 8106 to file the forms relied upon by the government in the indictment, the earlier version of the statute cannot apply to his conduct'.[3]

Section 8106 applies to partially disabled individuals and specifically authorizes the Secretary of Labor to require a partially disabled employee to report his earnings periodically. 5 U.S.C. § 8106. Mr. Machi, however, was not partially disabled. Rather, he was classified by OWCP as temporarily totally disabled. Any reports filed by Mr. Machi were either filed voluntarily or pursuant to the Secretary's presumed authority to require reports from totally disabled individuals under 5 U.S.C. § 8105, which applies to totally disabled individuals. *See United States v. Austin,* 817 F.2d 1352, 1355 (9th Cir.1987) (though § 8105 does not contain express grant of authority to require reports from totally disabled individuals, "it is implicit in the statutory scheme for the Department to make inquiries to determine whether the disability or dependency has ended"); *Brumley v. U.S. Dep't of Labor,* 827 F.Supp. 1409, 1414 (E.D.Ark.1993) (referring to Secretary's "implied authority" under § 8105 to require temporarily totally disabled individuals to file earnings reports).

---

1. Mr. Machi was also the victim of a drive-by shooting on August 16, 1994. As a result of multiple gun shots, Mr. Machi lost his right eye, had one rib removed to rebuild a left elbow which was shattered and destroyed, has significantly impaired use of his left arm and wrist, and suffered a collapsed lung and other injuries. *Id.* at ¶¶ 79–86. Needless to say, the shooting incident and resulting injuries and related trauma have effectively changed Mr. Machi's life.

2. The earlier version of Section 1920 also provided for criminal penalties for false statements made "in a claim for compensation." Neither

the government nor the defense argues that this portion of section 1920 is applicable here. All of Mr. Machi's false statements were apparently made in the update forms submitted to the government, and not in his original "claim" for benefits. *See* 5 U.S.C. § 8121 (discussing claim for benefits).

3. Credit must be given to Assistant United States Attorney Geoffrey Kaiser, for directing the Court to most, if not all, of the relevant case law—both favorable and unfavorable to the government's position.

In response, the government contends that although defendant was temporarily totally disabled (and section 8106 applies only to the partially disabled), the department was still authorized to seek the information from him. The government is likely correct in this regard, *see, e.g., id.,* but the department's authority to seek the information is not the issue here. Rather, by its terms, section 1920 applies only to reports *"required by section 8106."*

I have located only one case directly addressing this less than garden-variety issue. In *U.S. v. Dorey,* 711 F.2d 125 (9th Cir.1983), the Ninth Circuit reversed a conviction for violation of 18 U.S.C. § 1001, the false statement statute, because the indictment *charged* that the false statements were made on a report required by section 8106. The *Dorey* court held that, because the defendant was temporarily totally disabled, section 8106 did not require him to file any report. *Id.* at 128. Though *Dorey* involved an indictment under section 1001, the language in the *Dorey* indictment that limited the charges to false statements made on reports required by section 8106 effectively limited the indictment to a section 1920 violation such as the one at issue here. The language of *Dorey* court is persuasive, and it follows that the pre-amendment version of section 1920 cannot reach Mr. Machi's conduct.

Although the government is correct in its assertion that the Ninth Circuit later limited the holding in *Dorey,* it did so only in cases in which defendants were charged with violations of 18 U.S.C. § 1001 without any reference to section 8106. See *U.S. v. Olson,* 751 F.2d 1126, 1127–28 (9th Cir.1985) (section 1001 is applicable to statements made on forms submitted by defendant who was temporarily totally disabled); *U.S. v. De Rosa,* 783 F.2d 1401, 1407–08 (9th Cir.1986) (affirming conviction under section 1001); *U.S. v. Austin,* 817 F.2d 1352, 1354 (9th Cir.1987)

(affirming conviction under section 1001); *see also U.S. v. Kappes,* 936 F.2d 227, 231 (6th Cir.1991) (section 1001 is applicable to statements made on forms submitted by defendant who was temporarily totally disabled). Thus, what these later cases stand for, at best, is that "even if the Department [of Labor] has no right under § 8106 to require earnings reports from those temporarily totally disabled, it can still require them pursuant to an implied authority under § 8105 [ (which addresses total disability) ]." *Brumley,* 827 F.Supp. at 1414. Though section 1001 thus reaches false statements made by those totally disabled because it is a catch-all false statements statute, section 1920 does not reach such statements because they are not "required" by section 8106.[4]

Accordingly, the loss amount here, required for the guideline determination is reduced to the $20,000 to $40,000 range, which requires a specific offense characteristic upward adjustment of 4 levels. When added to Mr. Machi's base offense level of 6, the resulting total offense level is 10. With a Criminal History Category I, the total offense level places Mr. Machi in the 6–12 months range.[5]

### III. Conclusion

Mr. Machi is hereby sentenced to a term of imprisonment of one month, to be followed by a term of two years of supervised release, with a condition of the supervised release being that the first six months be spent in home detention. Additionally, Mr. Machi shall pay restitution in the amount of $40,000 plus the cost of custody and supervision, and a $100 assessment. Having considered the defendant's financial resources and assets, his projected income and his financial obligation, *see* 18 U.S.C. § 3664(f)(2), defendant shall begin paying restitution upon his release from prison and shall pay such restitu-

---

4. The government's contention that the conduct at issue was criminal pursuant to 18 U.S.C. § 1001 again misses the point. Mr. Machi was charged with, and pled guilty to, violations of section 1920, not section 1001. The issue is thus whether his conduct before September 1994 violated 18 U.S.C. § 1920, and not whether it violated *any* criminal statute.

5. The government argued that the applicable loss amount was $122,000. Such an amount requires a specific offense characteristic upward adjustment of 7 levels, resulting in a total offense level of 10. With a Criminal History Category I, the total offense level would place Mr. Machi in the 12–18 months range.

tion annually, at the rate of 10% of his adjusted gross income.

**SO ORDERED.**